USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _11/1/2023_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHYLLIS SWAN,

                              Plaintiff,

              -against-

SOTHEBY'S INC., and ROBERT
EVERETT PAGE IV,

                              Defendants.

1:22-cv-10406 (MKV)

**MEMORANDUM OPINION
AND ORDER GRANTING
MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Phyllis Swan brings this action against Sotheby's Inc. ("Sotheby's") and Robert

Everett Page IV (collectively, "Defendants") asserting five claims: (1) conversion, (2) replevin,

(3) declaratory judgment, (4) abuse of process, and (5) aiding and abetting conversion. Defendants

move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons,

the motion to dismiss is GRANTED.

**BACKGROUND**[1]

This case involves a dispute about the ownership of a drawing by artist Jean-Michel

Basquiat (the "Drawing"). *See* Drawing [ECF No. 10-1]. Swan contends that the Drawing was a

business asset owned by a business called "Fertility" that she co-owned with her partner, Isaia

Rankin, in the 1980s. First Amended Complaint ¶¶ 15–24 [ECF No. 10] ("FAC" or "Complaint").

After Rankin passed away in 1989, employees "looted the belongings" at two of Fertility's

business locations and took items "without [Swan] or [Rankin's] estate's permission." FAC ¶ 25.

One of Fertility's employees at the time was Defendant Page. FAC ¶ 22. Within "a few years" of

---

[1] The facts are taken from the Complaint, and for purposes of resolving this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rankin's death, Swan began looking for the missing Drawing.  FAC ¶ 26.  Her search continued

for "almost 30 years."  FAC ¶ 29.

In 2019, Swan learned from a friend that Sotheby's was offering the Drawing at auction.

FAC ¶ 30.  Sotheby's had consigned the Drawing from Page, who claimed that Rankin gifted him

the Drawing shortly before Rankin's death.  FAC ¶ 41.  The Drawing was ultimately sold for

$40,000 in October 2019.  FAC ¶ 99.  In early October, Swan contacted Sotheby's, contending

that she was the true owner of the Drawing.  FAC ¶¶ 50, 139.  Sotheby's later rescinded the sale

and took possession of the Drawing.  FAC ¶ 108.

Faced with Swan and Page's competing claims of ownership, Sotheby's filed an

interpleader action in the Supreme Court of the State of New York in January 2020.  FAC ¶¶ 81,

84, 85.  After a hearing before Justice Carol Edmead, Swan and Sotheby's signed a stipulation (the

"Stipulation") providing, in part, that:

> IT IS HEREBY STIPULATED AND AGREED by and between Plaintiff
> Sotheby's Inc. . . . [and] Defendant Phyllis Swan . . . [and] Defendant Robert
> Everett Page IV . . . as follows:
>
> 1.      In accordance with the hearing . . . on January 29, 2020, Sotheby's
> acknowledges and agrees that it does not have, and it has waived, any interest in
> the [Drawing] . . . including any interest to a commission on the [Drawing's] sale;
>
> 2.      Claimants [(Swan and Page)] agree to Sotheby's request to withdraw from
> this action . . . and the Claimants will continue to adjudicate their claims to title to
> [the Drawing] directly between themselves;
>
> 3.      Sotheby's **agrees to hold the [Drawing]** at issue, without cost (of storage
> or insurance) to any Claimant, **pending an instruction from the Court or by both
> of the Claimants**, as to which Claimant the [Drawing] is to be released to;
>
> 4.      This Stipulation shall not (a) prevent or waive any claims that Swan may
> attempt to assert against Sotheby's, nor (b) prevent or waive any claim or
> application that Sotheby's may make to the Court for reimbursement of its
> attorneys' fees . . . .

*See* Stipulation and Order [ECF No. 10-4] ("Stip.") (emphases added).[2]  The Stipulation was endorsed by Justice Edmead in February 2020.  *See* Stip.; FAC ¶ 87.

Swan filed this action in December 2022.  *See* Complaint [ECF No. 1.]  The FAC asserts the following claims: (1) conversion against both Sotheby's and Page, (2) replevin against Sotheby's only, (3) declaratory judgment against Page only, (4) abuse of process against Sotheby's only, and (5) aiding and abetting conversion against Sotheby's only.  *See* FAC.  Sotheby's moves to dismiss the claims asserted against it pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Motion to Dismiss [ECF No. 14]; Defendant's Memorandum of Law in Support [ECF No. 14] ("Def. Mem.").  Swan opposed, *see* Response in Opposition [ECF No. 21] ("Opp."),[3] and Sotheby's replied.  *See* Reply Memorandum of Law [ECF No. 23] ("Reply.").

Defendant Page proceeds *pro se*.  He has filed multiple letters on the docket in this case, [*see* ECF Nos. 9, 17, 19, 25, 26], two of which request that the Court dismiss the claims asserted against him for the reasons outlined in Sotheby's memorandums of law.  [ECF Nos. 17, 25.] Consistent with this Court's obligation to "liberally construe pleadings and briefs submitted by *pro se* litigants," the Court construes these filings as a motion to dismiss by Defendant Page. *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court

---

[2] Although the Stipulation includes a signature block for Defendant Page, he did not sign the copy of the Stipulation attached to the FAC.  *See* Stip.

[3] The opposition brief is rife with typographical errors.  For instance, Swan directs the Court to the citation "272 A.D.2d 421," *see* Opp. 8, which is a *habeas corpus* case.  Similarly, Swan provides a citation to "77 N.Y.S.2d 311," *see* Opp. 9, which is a New York Supreme Court decision from 1947 resolving a child custody dispute.

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  The Court may also consider "documents attached to the complaint as an exhibit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

The Court must "liberally construe pleadings and briefs submitted by *pro se* litigants," and "read[] such submissions to raise the strongest arguments they suggest."  *McLeod*, 864 F.3d at 156.

## ANALYSIS

### I.    Swan Does Not Plausibly Allege a Conversion Claim or an Aiding and Abetting Conversion Claim

Swan alleges that Sotheby's converted the Drawing by taking (and retaining) possession of it.  *See* FAC ¶ 109.  In addition, she alleges that Page converted the Drawing by "continu[ing] to keep the [Drawing] from [her]."  FAC ¶ 110.  Swan also alleges that Sotheby's aided and abetted Page's conversion of the Drawing because Sotheby's "intentional[ly] and reckless[ly] disregard[ed] [Swan's] ownership rights" after Swan contacted Sotheby's, including by "ignor[ing] the proof" of ownership Swan provided.  *See* FAC ¶¶ 138–39.  Defendants move to dismiss both claims.

#### 1.    *Conversion*

In New York, conversion "is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights."  *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (citation omitted).  To state a claim for conversion, Swan must allege "legal ownership or an immediate right of possession to specifically identifiable [property] and that the defendant[s] exercised an unauthorized dominion

4

over such [property] to the exclusion of the plaintiff's rights." *CSI Grp. v. Harper*, 153 A.D.3d 1314, 1320, 61 N.Y.S.3d 592, 599 (2d Dep't 2017) (citations omitted).

     a.    *Conversion Claim Against Sotheby's*

The conversion claim against Sotheby's fails. Even assuming Swan alleges legal ownership of the Drawing,[4] Swan does *not* plausibly allege that Sotheby's exercised "an *unauthorized* dominion" over it. *Id.* Indeed, the Stipulation plainly shows that Swan "STIPULATED AND AGREED" that Sotheby's would hold the Drawing "pending an instruction from the Court, or by both [Swan and Page]." Sotheby's has not received either instruction.[5] Sotheby's possession of the Drawing is therefore authorized, and the conversion claim must fail. *See Chem. Bank v. Ettinger*, 196 A.D.2d 711, 714, 602 N.Y.S.2d 332, 335 (1st Dep't 1993) (trial court erred in denying motion to dismiss a conversion claim where "[n]one of [plaintiff's] allegations . . . refute[d] the fact that the actions of [defendant] were *expressly authorized* by the loan documents, pledge letter, collateral letter and guaranty" (emphasis added)); *Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 416 (S.D.N.Y. 2007), *aff'd*, 268 F. App'x 17 (2d Cir. 2008) (dismissing conversion claim where complaint did not allege that defendant "improperly deprive[d] another person of what was rightfully his").[6]

---

[4] The allegations pertaining to Swan's claimed ownership rest on a multitude of legal conclusions which the Court need not accept as true. *See Iqbal*, 556 U.S. at 678; *see also* FAC ¶¶ 37, 38, 58, 62, 63, 64, 124.

[5] Swan vaguely suggests, without authority, that the Stipulation should not be analyzed using ordinary principles of contract interpretation. *See* Opp. 17. Swan is incorrect. *See In re Blackwood Assocs., L.P.*, 153 F.3d 61, 66 (2d Cir. 1998) ("[T]he Stipulation is . . . more akin to a run-of-the-mill contract than to a court order."); *Richard Feiner & Co. v. H R Indus., Inc.*, 182 F.3d 901 (2d Cir. 1999) (same).

[6] To the extent Swan contends that Sotheby's wrongfully retained the Drawing after Swan notified Sotheby's of her claimed ownership, the FAC affirmatively alleges that Swan *demanded* that Sotheby's take possession. *See* FAC ¶ 108 ("Defendant Sotheby's . . . retained the sole right to repossess the [Drawing] from the buyer, and upon Plaintiff's [sic] Swan's written demand . . . rescinded the sale . . . and took possession only after Plaintiff made legal efforts to be connected directly with the buyer.")

Swan does not persuade otherwise.  First, pointing to the language of the Stipulation providing that "*Sotheby's agrees* to hold the [Drawing] at issue, without cost . . . to any Claimant," Swan argues that *she* did not agree to Sotheby's retention of the Drawing—instead, Sotheby's *alone* agreed *with Judge Edmead*.  Stip. (emphasis added); *see* Opp. 17–18.  This assertion is baseless.  The Stipulation begins with the statement that Sotheby's *and* Swan "HEREBY STIPULATE[] AND AGREE[] . . . *as follows*."  Stip. (emphasis added).  This language, coupled with her counsel's signature at the end of the document, clearly indicate Swan's assent to all of the numbered terms that follow.  More importantly, Judge Edmead did *not* agree to any of the stipulated terms.  The judge was *not* a party to the interpleader action, nor to the Stipulation.  Rather, as a neutral arbiter of the parties' dispute, Judge Edmead was tasked only with "enforc[ing] the stipulation."  *Sanchez v. Maher*, 560 F.2d 1105, 1108 (2d Cir. 1977).[7]  Further, even assuming that any agreement *were* between Sotheby's and Judge Edmead *only*—which it was not—Swan asks the Court to conclude that Sotheby's converted her property by complying with an Order of the New York Supreme Court.  This argument is nonsensical and will not be entertained further.[8]

Swan next asserts that Sotheby's failed to adhere to the terms of the Stipulation, thereby "void[ing] any authorization it had to hold the piece."  Opp. 18.  Swan contends that Sotheby's charged her for storage and other costs, in violation of the Stipulation.  *See* Opp. 18.  But Swan provides no authority for the proposition that any breaches of the Stipulation by Sotheby's absolve

---

[7] The Court further rejects any suggestion by Swan that Sotheby's agreed *with itself* to hold the Drawing.  That would not be an agreement at all.  *See Agreement*, Black's Law Dictionary (11th ed. 2019) ("A mutual understanding *between two or more persons* about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by *two or more persons*." (emphases added)).

[8] The Court need not accept as true Swan's allegations that she "never directed . . . Sotheby's to hold the [Drawing] [and] never agreed to [Sotheby's] holding the [Drawing]," *see* FAC ¶ 90, because they conflict with the plain language of the Stipulation—an exhibit attached to the Complaint.  *See Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008) ("The court need not accept as true an allegation that is contradicted by documents on which the complaint relies.").

her of her own obligations under the Stipulation. "[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and will not defeat a motion to dismiss." *Berrian v. Pataki*, 510 F. Supp. 2d 348, 354 (S.D.N.Y. 2007) (citations omitted). Swan's unsupported contention that "Sotheby's should be estopped from seeking any relief . . . based on equitable principles," Opp. 18, is also devoid of authority.

The conversion claim asserted against Sotheby's fails for a separate and independent ground: it is time-barred. In New York, there is a three-year statute of limitations for conversion. *See* N.Y. C.P.L.R. § 214(3). Where the party in possession of stolen property is a thief, the statute of limitations runs from the time of the theft. *See Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 318, 569 N.E.2d 426, 429, 567 N.Y.S.2d 623, 626 (N.Y. 1991). Similarly, if the holder of the property is a bad faith possessor, the statute of limitations runs from the date of the bad faith acquisition. *See Close-Barzinex rel. de Bekessy v. Christie's, Inc.*, 51 A.D.3d 444, 444, 857 N.Y.S.2d 545, 546 (1st Dep't 2008). If, however, the holder of the property is a good-faith purchaser, the limitations period runs from the time that the plaintiff demands its return. *Id.*

The FAC suggests that Sotheby's was a bad faith possessor of the Drawing. Specifically, Swan contends that Sotheby's "colluded" with Page to "deny [Swan's] rights as the true owner" and to "keep the [Drawing] out of [her] possession." FAC ¶ 112. The three-year limitations period therefore runs from the time that Sotheby's acquired the Drawing from Page. Because the sale of the Drawing occurred in October 2019, *see* FAC ¶ 41, any transfer of the Drawing from Page to Sotheby's must have occurred *before* October 2019. This lawsuit was filed over three years later— in December 2022. *See* Complaint. The conversion claim is therefore time-barred.

Swan urges the Court to adopt the demand and refusal rule relevant to good faith purchasers. *See* Opp. 14. Even if the demand and refusal rule applied here, the conversion claim would still be untimely. The FAC alleges that Swan notified Sotheby's of her claim "in early

October 2019." FAC ¶ 50. Swan also attaches a letter to the FAC, dated November 14, 2019, in which she demands return of the Drawing. *See* Letter [ECF No. 10-2]. Again, because Swan did not file this lawsuit until December 2022, she may not assert a conversion claim against Sotheby's.

   *b.* <u>Conversion Claim Against Page</u>

   Swan similarly fails to state a claim against Page. Even assuming the FAC plausibly alleges that Page converted the Drawing,[9] the three-year limitations period has expired. The allegations of the FAC—which appear intentionally opaque—suggest that Page stole the Drawing in the late 1980s or early 1990s. Specifically, Swan alleges that employees of Fertility "looted the belongings" at several business locations after Rankin's death in 1989 and took items "without [Swan] or [Rankin's] estate's permission." FAC ¶ 25. Swan also alleges that Page was an employee of Fertility at that time. FAC ¶ 22. These allegations suggest that Page was a thief— not a good faith purchaser. The three-year limitations period therefore began to run at the time of the theft approximately thirty years ago and, as a result, is long-expired.

   In opposition, Swan suggests that the Court consider *Page's* contention that the Drawing "was given to him as a gift" by Rankin for purposes of calculating the statute of limitations period. Opp. 16. Sotheby's correctly notes that this argument turns the motion to dismiss standard on its head, because the Court is bound to accept as true the allegations of the *Complaint*—not of the Defendant. *See* Reply 6; *Iqbal*, 556 U.S. at 678. Moreover, the Complaint repeatedly suggests that Page's "gift story" is false. *See* FAC ¶¶ 42 ("Sotheby's had not received any documentation to support Defendant Page's claim that the work had been gifted to him."); 56 ("Defendant Page had only provided a story stating that the artwork was gifted to him by Mr. Rankin."); 64 ("[E]ven if Defendant Page's gift story were true . . . ."); 123 ("Plaintiff asserts that Defendant Page does

---

[9] Again, the allegations pertaining to Swan's claimed ownership are largely legal conclusions. *See supra* note 4.

not have good title to the artwork."); 123 ("Plaintiff doubts Defendant Page's gift story."); 124 ("Mr. Rankin . . . died six months after the purported 'gift.'"); 125 ("Since Defendant Page . . . maintains his gift story."). The Court will therefore not—and indeed, *cannot*—consider Defendant Page's allegations for purposes of determining the statute of limitations relevant to this cause of action, or otherwise.[10]

For these reasons, Count One is dismissed.

### 2. *Aiding and Abetting Conversion*

To state a claim for aiding and abetting a conversion, Swan must plausibly allege (1) "the existence of a primary violation," (2) "actual knowledge of the violation on the part of" Sotheby's, and (3) "substantial assistance." *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 393 (S.D.N.Y. 2010).

This claim fails for at least two reasons. First, Swan has not stated a "primary" claim for conversion against either Sotheby's or Page. *See* Section I.1; *Berry v. Deutsche Bank Tr. Co. Americas*, No. 07-cv-7634, 2008 WL 4694968, at *9 (S.D.N.Y. Oct. 21, 2008), *aff'd*, 378 F. App'x 110 (2d Cir. 2010) ("To allege a claim for aiding and abetting a conversion, a plaintiff must sufficiently allege that a conversion has occurred."). Second, Swan does not allege that Sotheby's had "actual knowledge" of Page's conversion. Instead, the FAC suggests that Sotheby's *should have known* about Page's conversion. *See* FAC ¶¶ 42 ("Sotheby's had not received any documentation to support Defendant Page's claim that the work had been gifted to him."); 43

---

[10] In a transparent effort to avoid this conclusion, the FAC states that Swan "does not assert that Defendant Page stole the [Drawing]." FAC ¶ 40. This allegation, of course, conflicts with the multitude of other statements throughout the FAC suggesting that Page's "gift story" is false. *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–52 (2d Cir. 2014) ("Although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted by more specific allegations in the Complaint." (citation omitted)). The Court therefore need not accept this assertion as true. Further, Swan fails to affirmatively allege that Page *was* a good faith purchaser, or to otherwise state how she believes Page came into possession of the Drawing. The Court therefore has no basis to conclude that Page was a good faith purchaser, particularly in light of Swan's strong and repeated suggestions to the contrary.

("Sotheby's made no effort to reach out to Mr. Rankin's heirs and did not attempt to contact Ms. Swan."); 45 ("Red flags were abundant."); 47 ("[T]his text as well as Defendant Pages' [sic] statements . . . should have raised red flags for Defendant Sotheby's."). These allegations are "legally insufficient" because Swan does not clearly allege that Sotheby's had *actual* knowledge of any wrongdoing by Page. *H2O Swimwear, Ltd. v. Lomas*, 164 A.D.2d 804, 807, 560 N.Y.S.2d 19, 21–22 (1st Dep't 1990); *see also Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998) ("New York common law . . . has not adopted a constructive knowledge standard for imposing aiding and abetting liability. Rather, New York courts and federal courts in this district, have required actual knowledge."). Count Five is dismissed.

## II.     Swan Does Not Plausibly Allege a Replevin Claim

In New York, replevin is "a remedy employed to recover specific, identifiable items of personal property." 23 N.Y. Jur. 2d § 95 (2023). To state a claim for replevin, Swan must allege that Sotheby's (1) "is in possession of certain property" and that (2) Swan has a "superior right" to that property. *Westbury Recycling, Inc. v. Westbury Transfer & Recycling, LLC*, 209 A.D.3d 929, 932, 177 N.Y.S.3d 101, 105 (2d Dep't 2022). As with conversion, the statute of limitations for replevin is three years. *See Middendorf v. Am. Numismatic Soc'y*, 209 A.D.3d 534, 534, 176 N.Y.S.3d 44, 45 (1st Dep't 2022).

The replevin claim largely mirrors the conversion claim. Swan alleges that Sotheby's wrongfully possesses the Drawing, and it should be returned to her. *See* FAC ¶¶ 114–20.

The replevin claim fails for the same reasons as the conversion claim. The Stipulation—signed by Swan's counsel and attached as an exhibit to her Complaint—demonstrates that Swan agreed that Sotheby's would hold the Drawing "pending an instruction from the Court, or by both [Swan and Page]." Stip. Swan does not allege that Sotheby's has received either instruction and,

therefore, Swan does not demonstrate a "superior right" of possession to the Drawing. Similarly, because Swan does not allege that Sotheby's was a good-faith possessor, the replevin claim is barred by the statute of limitations. Count Two is dismissed.

### III.   Swan Does Not Plausibly Allege an Abuse of Process Claim

The abuse of process claim alleges that the interpleader action filed by Sotheby's in New York state court was "bogus." FAC ¶ 135. Specifically, Swan contends that Sotheby's knew that it "did not meet any of the material prerequisites to qualify as an interpleader" and that it "used the interpleader action . . . to harm [Swan's] property interests and gain an unjust economic advantage." FAC ¶¶ 126–36; *see also* Opp. 7–11. Sotheby's moves to dismiss.

To state an abuse of process claim, Swan must allege that Sotheby's: (1) used a "regularly issued process, either civil or criminal," (2) had "an intent to do harm without excuse or justification," and (3) used "the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 469 N.E.2d 1324, 1326, 480 N.Y.S.2d 466, 468 (N.Y. 1984). In New York, "the institution of a civil action by summons and complaint is not legally considered process capable of being abused." *Id.*; *see also Manhattan Enter. Grp. v. Higgins*, 816 F. App'x 512, 514 (2d Cir. 2020) ("[T]he commencement of a civil action cannot, by itself, support a plaintiff's claim for abuse of process, even when the civil action was 'intended to cause the plaintiff expense and to burden him with the defense of a protracted legal proceeding.'" (quoting *Curiano*, 63 N.Y.2d at 116, 469 N.E.2d at 1326, 480 N.Y.S.2d at 468) (cleaned up)); *McMahan v. McMahan*, 164 A.D.3d 1486, 1488, 84 N.Y.S.3d 510 (2d Dep't 2018) ("Frivolous litigation requiring a party to expend legal fees is not a sufficient basis for a cause of action sounding in abuse of process."); *Asia TV USA, Ltd. v. Total Cable USA LLC*, No. 16-cv-6873, 2018 WL 1626165, at *4 (S.D.N.Y. Mar. 29, 2018) ("The allegation that ATUL initiated this action in bad faith cannot, without more, support an abuse of process claim.").

Swan bases the abuse of process claim *solely* on Sotheby's "filing [of] its dishonest interpleader action."  Opp. 8; *see also* Opp. 9 ("Sotheby's had no legitimate justification or excuse to pursue an interpleader action."); 11 ("[T]he filing was a ruse to achieve other purposes.").  But the filing of a civil action is "*not* legally considered process capable of being abused."  *Curiano*, 63 N.Y.2d at 116, 469 N.E.2d at 1326, 480 N.Y.S.2d at 468 (emphasis added).  Accordingly, this claim fails as a matter of law.[11]

Indeed, Sotheby's decision to rescind the sale and file an interpleader action after learning of Swan's claimed ownership was an *appropriate*—not abusive—use of process.  The interpleader action resulted in a court-ordered Stipulation that was signed by both Swan and Sotheby's.  *See* Stip.  If Swan has a grievance with that outcome, or with the process that she received in state court, her remedy is with the state courts of New York.

Further, even assuming Swan had alleged an abuse of process claim, this claim would also be barred by the one-year statute of limitations period.  *See Gallagher v. Directors Guild of America, Inc.*, 144 A.D.2d 261, 262, 533 N.Y.S.2d 863, 864 (1st Dep't 1988) (one year statute of limitations for abuse of process); *Bittner v. Cummings*, 188 A.D.2d 504, 506, 591 N.Y.S.2d 429, 431 (2d Dep't 1992) (same); *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, No. 12-cv-974, 2015 WL 5729969, at *28 (S.D.N.Y. Sept. 30, 2015) (same).[12]  The interpleader action was commenced in January 2020 and Justice Edmead signed the Stipulation in February

---

[11] To the extent that Swan alleges that Sotheby's violated "its promises" in the Court-ordered stipulation, her remedy is an action for breach—*not* abuse of process.  Opp. 10.

[12] Swan urges the Court to disregard the great weight of New York state authority (including every appellate court to have considered this issue) and, instead, to apply a three-year statute of limitations to the abuse of process claim.  *See* Opp. 19–21.  In support of this argument, Swan cites a *single* trial court decision—written in 1976—from Nassau County: *Levine v. Sherman*, 86 Misc. 2d 997, 384 N.Y.S.2d 685 (N.Y. Sup. Ct. 1976).  *See* Opp. 19.  Swan concedes that *Levine* is a "lonely" decision.  Opp. 19.  The Court agrees.  Although Swan opines at length regarding what she believes is a "correct interpretation" of the law, *see* Opp. 19, this Court is "*bound* to apply the law as interpreted by New York's intermediate appellate courts."  *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999) (emphasis added).  Swan's arguments are therefore meritless, irrelevant, and unhelpful.

2020.  FAC ¶¶ 85, 87.  This action was commenced nearly two years later, in December 2022, and is therefore time-barred.  *See* Complaint [ECF No. 1.]

For these reasons, Count Four is dismissed.

### IV.     Swan Does Not Plausibly Allege a Declaratory Judgment Claim

Swan seeks a declaratory judgment that she is "the sole owner of the artwork."  FAC ¶ 125.  A "request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights."  *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993); *see also Cisco Sys., Inc. v. Synamedia Ltd.*, 557 F. Supp. 3d 464, 474 (S.D.N.Y. 2021) ("A request for relief in the form of a declaratory judgment does not constitute an independent cause of action.").

Further, "district courts possess *discretion* in determining whether and when to entertain an action under the Declaratory Judgment Act."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (emphasis added).  In particular, the Court must consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).  The requested declaratory relief will serve no useful purpose in clarifying any legal issue.  Indeed, this very issue was already the subject of the interpleader action filed in New York Supreme Court, which resulted in a Stipulation executed by the parties and endorsed by Justice Edmead.  The Court declines to exercise its discretion to entertain this claim.  For these reasons, Count Three is dismissed.

### V.     Futility of Further Amendment

Swan has already amended her complaint once and does not request leave to amend again.  Accordingly, the dismissal of this action is with prejudice.  *See Felder v. United States Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022) ("[W]e certainly see no error or abuse of discretion in the

District Court's dismissal of Felder's complaint with prejudice, as Felder did not request leave to re-amend."); *Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 F. App'x 472, 474 (2d Cir. 2009) ("Given that Trautenberg did not move for leave to replead in opposition to [the] motion to dismiss his original complaint with prejudice, the district court did not abuse its discretion by failing to grant him, *sua sponte*, leave to replead.").[13]

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED with prejudice.  Swan's request for oral argument is DENIED.  The Clerk of Court is respectfully requested to terminate docket entry 14 and to close this case.

The Clerk of Court is respectfully requested to mail a copy of this Order to the *pro se* Defendant at the address of record.

**SO ORDERED.**

Date:  **November 1, 2023**
       **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

---

[13] In its reply brief, Sotheby's requests an award of attorneys' fees pursuant to 22 N.Y.C.R.R. § 130–1.1, which authorizes courts to award costs, fees, and other sanctions for "frivolous conduct."  *See* Reply 9.  However, "new arguments may not be made in a reply brief."  *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999).  In any event, "[t]his provision . . . is part of the Rules of the Chief Administrator of the New York State Courts governing judicial administration of the state courts, and is thus inapplicable to an attorney's conduct in federal court."  *Jewelers Vigilance Comm., Inc. v. Vitale Inc.*, No. 90-cv-1476, 1997 WL 582823, at *5 (S.D.N.Y. Sept. 19, 1997); *see also Harris v. Coleman*, 863 F. Supp. 2d 336, 345 (S.D.N.Y. 2012) (same); *Purjes v. Plausteiner*, No. 15-cv-2515, 2017 WL 6055047, at *2 (S.D.N.Y. Sept. 27, 2017) (same).  Accordingly, Sotheby's request is denied.