UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                         :

PHYLLIS SWAN,                     :    Index No. 1:22-CV-10406-MKV

                    Plaintiff,     :    **DEFENDANT ROBERT EVERETT**

                               :    **PAGE IV'S ANSWER TO FIRST**

     -against-           :    **AMENDED COMPLAINT WITH**

                               :    **COUNTERCLAIM**

ROBERT EVERETT PAGE IV,    :

                   Defendants.    :

-------------------------------------------------------- :
                               X

Defendant Robert Everett Page IV ("Defendant" or "Page"), by and through his undersigned counsel, hereby submits his Answer to the Amended Complaint of Phyllis Swan ("Plaintiff" or "Swan"), dated April 17, 2023 (Dkt. No. 10) (the "Amended Complaint") and asserts the following counterclaim against Swan. Except as expressly admitted herein, all allegations—including those contained in headings, subheadings, and footnotes—are denied. As for his Answer to the Amended Complaint with Affirmative Defenses, Page states as follows:

## INTRODUCTION

1.      Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Amended Complaint and therefore denies them.

2.      Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Amended Complaint and therefore denies them.

3.      Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Amended Complaint and therefore denies them.

4.      Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Amended Complaint and therefore denies them.

5.      Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of the Amended Complaint and therefore denies them.

## JURISDICTION AND VENUE

6.      Page admits that he is a resident of New York. The remainder of Paragraph 6 sets forth a legal conclusion to which no response is required. To the extent a response is required, Page denies the remaining allegations in Paragraph 6.

7.      Page denies that his address is 222 West 83rd Street, New York, New York 10024. The remainder of Paragraph 7 sets forth a legal conclusion to which no response is required. To the extent a response is required, Page denies the remaining allegations in Paragraph 7.

8.      Paragraph 8 sets forth a legal conclusion to which no response is required. To the extent a response is required, Page denies the allegations in Paragraph 8.

## FACTUAL BACKGROUND REGARDING CLAIMS FOR RELIEF

9.      Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Amended Complaint and the accompanying footnote and therefore denies them.

10.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Amended Complaint and therefore denies them.

11.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Amended Complaint and therefore denies them.

12.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Amended Complaint and therefore denies them.

13.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Amended Complaint and therefore denies them.

14.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Amended Complaint and therefore denies them.

15.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Amended Complaint and therefore denies them.

16.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Amended Complaint and therefore denies them.

17.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Amended Complaint and therefore denies them.

18.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 18 of the Amended Complaint and therefore denies them. Page denies that Isaia Rankin ("Rankin") kept the drawing at issue in this case (the "Drawing"), whether after "Basquiat finished his preliminary sketch," "[a]t the close of the collaboration," or at any other time. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18 of the Amended Complaint and therefore denies them.

19.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Amended Complaint and therefore denies them.

20.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of Paragraph 20 of the Amended Complaint and therefore denies them. Page denies the allegations in the third sentence of Paragraph 20 of the Amended Complaint.

21.    Page admits that Rankin hired employees and that Page was one of them. Page admits that he worked with Rankin, that his responsibilities included working with Barney's, and

that he worked with Rankin on other fashion projects. Page denies that he worked "primarily" on the Barney's project. To the extent any further response is required, Page denies the remaining allegations in Paragraph 21 of the Amended Complaint.

22. Page admits that he worked at 240 West 38th Street, the offices of Isaia NYC. Page further admits that he had access to the business' retail store location at 113 Spring Street. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Amended Complaint regarding the "Fertility boxes" and therefore denies them. To the extent any further response is required, Page denies the remaining allegations in Paragraph 22 of the Amended Complaint.

23. Page admits that Rankin passed away in July 1989 from respiratory failure due to complications from AIDS. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 23 of the Amended Complaint and therefore denies them.

24. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the Amended Complaint and therefore denies them.

25. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Amended Complaint and therefore denies them.

26. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Amended Complaint and therefore denies them.

27. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the Amended Complaint and therefore denies them.

28. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Amended Complaint and therefore denies them.

29. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Amended Complaint and therefore denies them.

30. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the Amended Complaint and therefore denies them.

31. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Amended Complaint and therefore denies them.

32. Page admits that he consigned the Drawing to Sotheby's for auction and that the Sotheby's website described the Drawing as coming from his collection. To the extent any further response is required, Page denies the remaining allegations in Paragraph 32 of the Amended Complaint.

33. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of the Amended Complaint and therefore denies them.

34. Page admits that the Sotheby's catalogue note states that the Drawing was gifted to Rankin by Basquiat, but Page denies that this statement is complete or accurate. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegation that the catalogue note erroneously implies that the artwork is a portrait of Rankin and therefore denies it. To the extent any further response is required, Page denies the remaining allegations in Paragraph 34 of the Amended Complaint.

35. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Amended Complaint and therefore denies them.

36. Paragraph 36 sets forth a legal conclusion to which no response is required. To the extent a response is required, Page denies the allegations in Paragraph 36 of the Amended Complaint.

37. Paragraph 37 sets forth a legal conclusion to which no response is required. To the extent a response is required, Page denies the allegations in Paragraph 37 of the Amended Complaint.

38. Paragraph 38 sets forth a legal conclusion to which no response is required. To the extent a response is required, Page denies the allegations in Paragraph 38 of the Amended Complaint.

39. Page admits that he consigned the Drawing to Sotheby's for sale in 2019. Page denies the remaining allegations in Paragraph 39 of the Amended Complaint.

40. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Swan's state of mind and knowledge in Paragraph 40 of the Amended Complaint and therefore denies them. Page denies the remaining allegations in Paragraph 40 of the Amended Complaint.

41. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Amended Complaint and therefore denies them.

42. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Amended Complaint and therefore denies them.

43. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the Amended Complaint and therefore denies them.

44. Page admits that Sotheby's arranged an interview with him prior to the auction. Page denies that the catalogue note misrepresents the origins of the Drawing or was replete with misinformation. To the extent any further response is required, Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 44 of the Amended Complaint and therefore denies them.

45. Page admits that Sotheby's published an article on September 20, 2019 in connection with the auction. Page denies the remaining allegations in Paragraph 45 of the Amended Complaint.

46. Page admits that the Sotheby's article published on September 20, 2019 does not mention Swan and states that Rankin had 24-hour nurses. Page denies the remaining allegations in Paragraph 46 of the Amended Complaint.

47. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of the Amended Complaint and therefore denies them.

48. Page admits that Sotheby's sold the Drawing at auction on October 2, 2019 on his behalf. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 48 of the Amended Complaint and therefore denies them.

49. Page admits that he consigned the work to Sotheby's and that he expected to receive the proceeds from its sale. Page denies the remaining allegations in Paragraph 49 of the Amended Complaint.

50. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 of the Amended Complaint and therefore denies them.

51. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 of the Amended Complaint and therefore denies them.

52. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of the Amended Complaint and therefore denies them.

53. Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 of the Amended Complaint and therefore denies them.

54.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Amended Complaint and therefore denies them.

55.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 of the Amended Complaint and therefore denies them.

56.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the Amended Complaint and therefore denies them.

57.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the Amended Complaint and the accompanying footnote and therefore denies them.

58.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of the Amended Complaint and therefore denies them.

59.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of the Amended Complaint and therefore denies them.

60.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 of the Amended Complaint and therefore denies them.

61.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the Amended Complaint and therefore denies them.

62.    Page denies that his alleged statements establish that the Drawing was created for a business or that it constitutes a business asset. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 62 of the Amended Complaint and therefore denies them.

63.    Page denies that the text "Proprietors Isaia Rankin Phyllis Swan" establishes that Swan was an owner of Fertility or had any ownership interest in the Drawing. Page lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 63 of the Amended Complaint and therefore denies them.

64.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the contents of the letter in Paragraph 64 of the Amended Complaint and therefore denies them. To the extent the allegations in Paragraph 64 set forth legal conclusions, no response is required. To the extent a response is required, Page denies those allegations.

65.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65 of the Amended Complaint and therefore denies them.

66.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 of the Amended Complaint and therefore denies them.

67.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 of the Amended Complaint and therefore denies them.[1]

68.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68 of the Amended Complaint and therefore denies them.

69.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 of the Amended Complaint and therefore denies them.

70.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 of the Amended Complaint and therefore denies them.

71.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 of the Amended Complaint and therefore denies them.

---

[1] Counsel notes that the Amended Complaint accidentally numbers two subsequent paragraphs as Paragraph 66. In answering the Amended Complaint, Defendant Page has renumbered the remaining paragraphs following Paragraph 66 in sequential order.

72.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 of the Amended Complaint and therefore denies them.

73.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 of the Amended Complaint and therefore denies them.

74.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 of the Amended Complaint and therefore denies them.

75.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 of the Amended Complaint and therefore denies them.

76.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 of the Amended Complaint and therefore denies them.

77.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 of the Amended Complaint and therefore denies them.

78.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 of the Amended Complaint and therefore denies them.

79.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79 of the Amended Complaint and therefore denies them.

80.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80 of the Amended Complaint and therefore denies them.

81.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81 of the Amended Complaint and therefore denies them.

82.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 of the Amended Complaint and therefore denies them.

83.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 of the Amended Complaint and therefore denies them.

84.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84 of the Amended Complaint and therefore denies them.

85.     Page admits that he was present in the courtroom on January 28, 2020. Page denies that his address was 222 West 83rd Street, New York, NY 10024. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 85 of the Amended Complaint and therefore denies them.

86.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86 of the Amended Complaint and therefore denies them.

87.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87 of the Amended Complaint and therefore denies them.

88.     Page admits that the parties entered into a stipulation and that, based on the document attached to the First Amended Complaint, Judge Edmead's order was entered on February 2, 2020. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 88 of the Amended Complaint and therefore denies them.

89.     Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 of the Amended Complaint and therefore denies them.

90.     Page admits that the Stipulation attached to the First Amended Complaint states that it preserves Swan's right to sue Sotheby's. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 90 of the Amended Complaint and therefore denies them.

91.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91 of the Amended Complaint and therefore denies them.

92.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92 of the Amended Complaint and therefore denies them.

93.    Page denies the allegations in Paragraph 93 of the Amended Complaint.

94.    Page denies the allegations in Paragraph 94 of the Amended Complaint insofar as they pertain to Page. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 94 of the Amended Complaint and therefore denies them.

95.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95 of the Amended Complaint and therefore denies them.

96.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96 of the Amended Complaint and therefore denies them.

97.    Page denies the allegations in Paragraph 97 of the Amended Complaint insofar as they pertain to Page and specifically denies that Page did not have good title to the Drawing. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 97 of the Amended Complaint and therefore denies them.

98.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98 of the Amended Complaint and therefore denies them.

99.    Page denies the allegations in Paragraph 99 of the Amended Complaint insofar as they pertain to Page and specifically denies that he requested Sotheby's to falsify the nature or origin of the Drawing. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 99 of the Amended Complaint and therefore denies them.

100.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100 of the Amended Complaint and the accompanying footnote and therefore denies them.

101.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101 of the Amended Complaint and the accompanying footnote and therefore denies them.

102.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102 of the Amended Complaint and therefore denies them.

103.    Page denies the allegations in Paragraph 103 of the Amended Complaint.

104.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104 of the Amended Complaint and therefore denies them.

105.    Page denies the allegations in Paragraph 105 of the Amended Complaint.

106.    Page denies the allegations in Paragraph 106 of the Amended Complaint.

<u>**COUNT I**</u>
**(Conversion)**
**Against Defendants Sotheby's and Page**

107.    Page repeats and incorporates by reference his responses to Paragraphs 1 through 106 of the Amended Complaint as if fully set forth herein.

108.    Page denies the allegations in Paragraph 108 of the Amended Complaint.

109.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109 of the Amended Complaint and therefore denies them.

110.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110 of the Amended Complaint and therefore denies them.

111.    Page denies the allegations in Paragraph 111 of the Amended Complaint.

112.    Page denies the allegations in Paragraph 112 of the Amended Complaint.

113.    Page denies the allegations in Paragraph 113 of the Amended Complaint.

114.    Page denies the allegations in Paragraph 114 of the Amended Complaint.

## COUNT II
### (Replevin)
### Against Defendant Sotheby's

115.    Page repeats and incorporates by reference his responses to Paragraphs 1 through 114 of the Amended Complaint as if fully set forth herein.

116.    Page admits that Sotheby's took possession of the Drawing from Page. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 116 of the Amended Complaint and therefore denies them.

117.    Page denies the allegations in Paragraph 117 of the Amended Complaint insofar as they pertain to Page. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 117 of the Amended Complaint and therefore denies them.

118.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118 of the Amended Complaint and therefore denies them.

119.    Page denies the allegations in Paragraph 119 of the Amended Complaint insofar as they pertain to Page. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 119 of the Amended Complaint and therefore denies them.

120.    Page denies the allegations in Paragraph 120 of the Amended Complaint.

121.    Page denies the allegations in Paragraph 121 of the Amended Complaint.

## COUNT III
### (Declaratory Judgment)
### Against Defendant Page

14

122.    Page repeats and incorporates by reference his responses to Paragraphs 1 through 121 of the Amended Complaint as if fully set forth herein.

123.    Page denies the allegations in Paragraph 123 of the Amended Complaint.

124.    Page denies the allegations in Paragraph 124 of the Amended Complaint.

125.    Page denies the allegations in Paragraph 125 of the Amended Complaint.

126.    Page denies the allegations in Paragraph 126 of the Amended Complaint.

**COUNT IV**
**(Abuse of Process)**
**Against Defendant Sotheby's**

127.    Page repeats and incorporates by reference his responses to Paragraphs 1 through 126 of the Amended Complaint as if fully set forth herein.

128.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128 of the Amended Complaint and therefore denies them.

129.    Page denies the allegations in Paragraph 129 of the Amended Complaint insofar as they pertain to Page. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 129 of the Amended Complaint and therefore denies them.

130.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 130 of the Amended Complaint and therefore denies them.

131.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 131 of the Amended Complaint and therefore denies them.

132.    Page denies the allegations in Paragraph 132 of the Amended Complaint insofar as they pertain to Page. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 132 of the Amended Complaint and therefore denies them.

133.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 133 of the Amended Complaint and therefore denies them.

134.    Page denies the allegations in Paragraph 134 of the Amended Complaint insofar as they pertain to Page. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 134 of the Amended Complaint and therefore denies them.

135.    Page denies the allegations in Paragraph 135 of the Amended Complaint insofar as they pertain to Page. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 135 of the Amended Complaint and therefore denies them.

136.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 136 of the Amended Complaint and therefore denies them.

137.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 137 of the Amended Complaint and therefore denies them.

**COUNT V**
**(Aiding and Abetting Conversion)**
**Against Defendant Sotheby's**

138.    Page repeats and incorporates by reference his responses to Paragraphs 1 through 137 of the Amended Complaint as if fully set forth herein.

139.    Page denies the allegations in Paragraph 139 of the Amended Complaint.

140.    Page denies the allegations in Paragraph 140 of the Amended Complaint insofar as they pertain to Page. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 140 of the Amended Complaint and therefore denies them.

141.    Page lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141 of the Amended Complaint and therefore denies them.

142.    Page denies the allegations in Paragraph 142 of the Amended Complaint.

143.    Page denies the allegations in Paragraph 143 of the Amended Complaint insofar as they pertain to Page. Page lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 143 of the Amended Complaint and therefore denies them.

144.    Page denies the allegations in Paragraph 144 of the Amended Complaint.

145.    Page denies the allegations in Paragraph 145 of the Amended Complaint.

## PRAYER FOR RELIEF

Page denies each and every allegation set forth in the Prayer for Relief of the Amended Complaint and denies that Plaintiff is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Page asserts the following Affirmative Defenses without assuming the burden of proof, persuasion, or production except where such burden is imposed by law on Page, reserving the right to supplement this Answer and Affirmative Defenses as appropriate.

## FIRST DEFENSE

Each and every one of the causes of action against Page fails to state a cause of action upon which relief can be granted or upon which the damages sought may be awarded.

## SECOND DEFENSE

The claims are barred, in whole or in part, by the applicable statutes of limitations.

## THIRD DEFENSE

The claims are barred, in whole or in part, by the doctrine of laches.

## FOURTH DEFENSE

17

The claims against Page are barred because Plaintiff is not the legal owner of the Drawing.

## FIFTH DEFENSE

Even if the demand-and-refusal rule applies to Swan's conversion claim, the claim is time-barred because Swan made a demand upon Page and Page refused that demand more than three years before Swan filed this action on December 8, 2022.

## RESERVATION OF RIGHTS

Future discovery may reveal additional facts supporting defenses not presently known to Page. Page reserves the right to assert additional defenses and claims, including counterclaims, crossclaims, and/or third-party claims, to the extent permitted by law, as may become appropriate based on discovery or further investigation.

**WHEREFORE**, Page respectfully requests entry of judgment granting the following relief:

(a)     Dismissing the Amended Complaint with prejudice and granting judgment in favor of Page on all claims;

(b)     Awarding Page the costs of defending this action, including attorneys' fees, expert fees, and disbursements to the maximum extent allowable by law; and

(c)     Granting such further relief as this Court may deem just and proper.

***

## ROBERT EVERETT PAGE IV'S COUNTERCLAIM AGAINST PHYLLIS SWAN

Pursuant to Rule 13(a) of the Federal Rules of Civil Procedure, Defendant and Counterclaim Plaintiff Robert Everett Page IV ("Page"), by and through undersigned counsel, asserts the following counterclaim against Plaintiff and Counterclaim Defendant Phyllis Swan ("Swan"), and alleges as follows:

## NATURE OF THE ACTION

18

1.      This is an action by Counterclaimant Page for declaratory relief to quiet title and to establish that he has full, right, and proper title to the drawing known as *Isaia's Fertility* by Jean-Michel Basquiat ("Basquiat"), measuring 9 by 8½ inches and executed circa 1980–1985 (the "Drawing"), contrary to the allegations made by Swan in the First Amended Complaint dated April 17, 2023 (Dkt. No. 10) (the "Amended Complaint"). In the alternative, Page seeks a declaration from this Court that Swan does *not* have legal title to the Drawing and that Page has a possessory interest in the Drawing superior to any interest claimed by Swan.

2.      Page asserts this Counterclaim in the alternative to his Answer to the Amended Complaint, pursuant to Federal Rule of Civil Procedure 8(d). Nothing herein shall be deemed an admission of any fact denied in Page's Answer, or of any liability, wrongdoing, or obligation to Swan or any other party, all of which are expressly denied.

3.      By asserting her meritless claim of ownership, Swan has injured Page by hampering his ability to control and dispose of the Drawing. Swan interfered with Page's ability to conclude the sale of the Drawing, which Page had consigned to Sotheby's and which Sotheby's sold at auction on October 2, 2019. Swan's interference caused Sotheby's to rescind the sale of the Drawing. The Drawing remains in Sotheby's custody following the resolution of the interpleader action brought in New York Supreme Court by Sotheby's in January 2020 and the parties' stipulation that Sotheby's would hold the Drawing while Swan and Page adjudicated their claims to title to the Drawing.

4.      Swan filed this action on December 8, 2022. Despite the passage of time and an attempted amicable resolution, Swan and Page have not resolved their dispute. Accordingly, Page seeks this Court's assistance in quieting title to the Drawing in his favor or, in the alternative, in declaring that Swan has no cognizable interest in the Drawing.

**PARTIES, JURISDICTION, AND VENUE**

5. Counterclaimant Robert Everett Page IV is a natural person and a resident and domiciliary of the State of New York.

6. Counterclaim Defendant Phyllis Swan is, upon information and belief, a natural person and a resident and domiciliary of the State of Ohio.

7. This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367 because the Counterclaim is sufficiently related to the claims in the First Amended Complaint that it forms part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Swan commenced this action in this District and has thereby consented to venue here with respect to any counterclaim arising out of the same transaction or occurrence, and because a substantial part of the events giving rise to the claims occurred within this District.

**FACTS**

**A. The Origins of Fertility and the Drawing**

9. Isaia Rankin ("Rankin") was a designer and entrepreneur who moved to New York City in the early 1980s to start a fashion business. At the start of his career, Rankin operated informally out of his apartment in the East Village, selling clothing and developing his brand under the name "Fertility." At that time, Fertility was merely a creative concept and a brand that Rankin was building — it was not incorporated or otherwise formally organized as a business entity.

10. During this period, Rankin met Jean-Michel Basquiat, a young New York artist who was then at the beginning of his career. The two collaborated, and Basquiat created designs, including T-shirts and postcards, intended to reflect Rankin's business vision. The Drawing, titled

20

*Isaia's Fertility*, was one such work, created by Basquiat as a prototype advertisement depicting Rankin's East Village apartment store.

11.     Although Basquiat wrote "Proprietors Isaia Rankin Phyllis Swan" on the Drawing, this was a prototype for an advertisement for a business concept that never came into existence. The business that Rankin eventually built — Isaia NYC — was a distinct and later entity in which Swan had no ownership, partnership, or other interest. Swan was not Rankin's business partner in Fertility or in any other venture, whether formal or informal, and had no ownership or partnership interest in any of Rankin's businesses at any time.

12.     The Drawing, an informal sketch, was never finalized or used to create any business materials for Fertility or any of Rankin's later ventures. The Drawing was not a business asset of Fertility or of any other entity. It remained the personal property of Basquiat from the time of its creation until his death.

**B.  Page's Relationship with Rankin and the Founding of Isaia NYC**

13.     Page moved to New York in 1985. He first encountered Rankin's work at Modern Girls, a SoHo boutique where Page was working that carried Isaia's designs. Rankin would visit the store weekly to deliver new merchandise and collect sales receipts. Over several months, Page and Rankin developed a strong rapport. As a newcomer to New York seeking to build a career in fashion, Page viewed Rankin as a mentor figure. After knowing Rankin for several months, Rankin approached Page about working together formally. Rankin hired Page, and Page soon began working at Rankin's office at 240 West 38th Street.

14.     In or about 1986, Rankin founded Isaia NYC, a registered New York business entity, at 240 West 38th Street, New York, New York 10018. Isaia NYC was the formal realization of Rankin's business concept. Page served as Director of Sales and Marketing and one of only four employees at the company. During Page's tenure, Isaia NYC experienced significant growth, with

annual revenue climbing from $100,000 to over $2,000,000. Isaia NYC maintained an exclusive distribution strategy, with its designs carried at premier specialty retailers around the world, including Barney's and Charivari in New York, Ultimo in Chicago, Fred Segal in Los Angeles, Browns in London, and Seibu in Japan. Page held primary responsibility for sales, public relations, and press, and served as the primary liaison for major press outlets including *Vogue*, *Harper's Bazaar*, and the *New York Times*. Swan had no ownership role or partnership interest at Isaia NYC.

15.     Rankin was Page's first mentor in fashion and one of the most significant influences on his professional life. The two developed a close personal and professional relationship over the course of their years working together.

## C.  Rankin's Illness

16.     In 1987, Rankin was diagnosed with HIV. His physical health began to decline seriously from that point. As Rankin was his friend and mentor, Page helped Rankin in obtaining medical care, including connecting him with Page's personal physician, Dr. Evan T. Bell, who diagnosed Rankin and took over his medical care. Over the following two years, Page was in close contact with Rankin, accompanying him to medical appointments and helping Rankin manage through his illness.

17.     As Rankin's condition deteriorated, three employees — Page, Noelle Nieva, and Megan Curran — continued running the company. Together with Lou Pearlman, Rankin's accountant and business advisor, they made the decision in or about 1989 to open a retail pop-up store on Spring Street in SoHo under the Fertility name to generate revenue to fund Rankin's nursing care. Swan was hired as a paid salesperson at the Spring Street store after it opened. Swan had no prior involvement, formal or informal, with Isaia NYC or any of Rankin's business activities before she was hired at the Spring Street store. Swan worked only at the Spring Street store and had no role in the Isaia NYC office or business.

18.     During the final months of his life, Rankin was hospitalized for an extended period lasting approximately four months over the summer of 1989. During this final hospitalization, Rankin was largely nonverbal and incommunicative. He had not been actively working for a significant period prior to this hospitalization due to his illness.

**D. Transfer of the Drawing to Page**

19.     In the years prior to his death, Basquiat rented a studio and living space from Andy Warhol, an internationally recognized artist who lived and worked in New York City. Warhol died on February 22, 1987. Following Warhol's death, Basquiat remained in the rented apartment.

20.     Basquiat, by then an internationally recognized artist, died on August 12, 1988. Following his death, members of Basquiat's family took possession of his paintings and other valuable artworks from the apartment. Fred Hughes, Warhol's longtime business manager, then asked Jennifer Goode ("Goode"), Basquiat's former girlfriend, to clear Basquiat's apartment of his remaining belongings, as the Warhol estate was eager to recover possession of the apartment.

21.     In the apartment, Goode found personal belongings, notebooks, and other items — including the Drawing — that were not then understood to be of significant monetary value. Goode wished to give the Drawing to someone who would find it meaningful.

22.     Jenny Lumet, a mutual friend of both Goode and Page, knew that Page had worked closely with Rankin and shared a deep connection with him. She informed Goode and, in or about the spring or early summer of 1989, Goode and Lumet delivered the Drawing to Page.

23.     At that time, Rankin was in his final hospitalization. Page kept the Drawing based on his relationship with Rankin and his understanding that Rankin wanted him to keep it. The Drawing was not transferred to Page pursuant to any caregiving arrangement or any agreement under which Page provided services to Rankin in exchange for the Drawing or any other thing of

23

value. Rather, Page received the Drawing without paying consideration for it and without any expectation of compensation or exchange.

24.     Rankin died on July 11, 1989. Following Rankin's death, neither Rankin's estate, his family, nor anyone acting on their behalf ever made any inquiry about the Drawing or Page's possession of it. Page has kept the Drawing since that time as a memento of his relationship with Rankin. The Drawing was the only tangible object Page had to remember Rankin by.

**E.  Thirty Years of Open Possession**

25.     From 1989 until 2019, Page held the Drawing openly and continuously, without concealment, and without any demand from Swan or anyone else claiming an interest in it. Swan made no demand upon Page and asserted no claim to the Drawing during this thirty-year period.

26.     Swan's failure to assert any claim for thirty years, while Page held the Drawing openly, prejudiced Page and establishes that Swan inexcusably delayed in bringing any claim to the Drawing.

**F.  The Sotheby's Sale and Swan's Interference**

27.     In August 2019, Page consigned the Drawing to Sotheby's and Sotheby's sold the Drawing at auction on October 2, 2019.

28.     In early October 2019, before Page received any proceeds from the sale, Swan contacted Sotheby's contending that she was the true owner of the Drawing. Sotheby's subsequently rescinded the sale and took possession of the Drawing.

29.     Faced with Swan and Page's competing claims of ownership, Sotheby's filed an interpleader action in the Supreme Court of the State of New York in January 2020. After a hearing before Justice Carol Edmead, the parties entered into a stipulation (the "Stipulation") providing, among other things, that Swan and Page would continue to adjudicate their claims to title to the Drawing directly between themselves, and that Sotheby's would hold the Drawing pending an

24

instruction from the Court or by both Swan and Page as to whom the Drawing should be released to. The state court subsequently dismissed the interpleader action with prejudice without adjudicating the underlying ownership dispute between Swan and Page.

30.     Swan filed this action on December 8, 2022. Sotheby's and Page moved to dismiss the First Amended Complaint in its entirety. The Court granted the motion, finding, among other things, that Swan's conversion claim against Page was time-barred because the First Amended Complaint suggested that Page had stolen the Drawing in the late 1980s or early 1990s, and the applicable three-year limitations period had long since expired. *Swan v. Sotheby's Inc.*, No. 1:22-CV-10406 (MKV), 2023 WL 7183762 (S.D.N.Y. Nov. 1, 2023).

31.     Swan appealed. The Second Circuit affirmed the dismissal of all claims against Sotheby's but vacated the dismissal of Swan's conversion and declaratory judgment claims against Page and remanded for further proceedings. *Swan v. Page*, 2024 WL 5165516 (2d Cir. Dec. 19, 2024).

32.     On remand, Page moved to dismiss the First Amended Complaint. This Court denied the motion, finding that Swan plausibly alleged that Page is a good faith purchaser — specifically, because Swan alleged that Page received the Drawing in exchange for caretaking services provided to Rankin, which the Court treated as consideration sufficient to trigger the demand-and-refusal rule. *Swan v. Page*, No. 1:22-CV-10406 (MKV), 2026 WL 836655 (S.D.N.Y. Mar. 26, 2026). The Court further noted that should discovery reveal that Page is not a good faith purchaser but rather a mere recipient of an unauthorized gift, the demand-and-refusal rule would not apply and Swan's claim would be time-barred. *Id*.

33.     Page is not a good faith purchaser of the Drawing. Page never entered into any agreement with Rankin or with anyone else in connection with the Drawing. Page received the

Drawing from Goode and kept it based on his close relationship with Rankin and his belief that Rankin wanted him to keep it. No consideration passed in connection with the transfer, nor did Goode or anyone else represent that the transfer was in consideration for any services previously rendered.

34. An actual controversy exists between Swan and Page concerning ownership of the Drawing. The Drawing remains in Sotheby's custody and has not been released to either party. The ownership dispute that Swan and Page agreed in the Stipulation to adjudicate directly between themselves has never been resolved.

## COUNT I
### (Declaratory Judgment)

35. Page incorporates by reference the allegations set forth in paragraphs 1 through 34 of this Counterclaim as if fully set forth herein.

36. Page is the rightful owner of the Drawing and is entitled to immediate possession of it. The Drawing was created by Basquiat, remained Basquiat's personal property until his death in 1989, and was thereafter transferred to Page by Goode. Page received the Drawing without consideration and without entering into any caregiving agreement with Rankin in connection with its transfer. Page has held the Drawing openly since 1989 and has always maintained a claim of right to it.

37. Swan has demanded possession and control of the Drawing and has insisted on her right to ownership, title, and possession of it. Swan commenced this action asserting claims for conversion and declaratory judgment based on her alleged ownership interest in the Drawing. Swan has failed and refused to yield her adverse claim to the Drawing or to recognize Page's title.

38. Swan's assertion of ownership, title, and right to possess the Drawing creates an actual controversy with Page over the ownership of the Drawing. This Court has recognized the

existence of that controversy, has found that Swan has plausibly alleged competing claims to the Drawing, and has expressly noted that Page is free to assert a counterclaim for declaratory relief in this action. No prior proceeding has resolved the underlying ownership dispute between Swan and Page.

39.     By virtue of the foregoing, Page is entitled to a judgment pursuant to 28 U.S.C. § 2201, et seq., declaring that all right, title, and interest in and to the Drawing is vested in Page, and that Swan has no right, title, or interest in the Drawing.

## PRAYER FOR RELIEF

**WHEREFORE**, Page respectfully requests that the Court enter an order and judgment in his favor and against Swan on each and every cause of action alleged against him, and:

(a)     Declaring that all right, title, and interest in and to the Drawing is vested in Page and that Swan has no right, title, or interest in the Drawing;

(b)     Awarding to Page his costs and disbursements incurred in this action, including reasonable attorneys' fees to the maximum extent allowed by law; and

(c)     Awarding Page such other and further relief as the Court deems just and proper.

Dated: New York, NY
      May 27, 2026

Respectfully submitted,

STUDIO LEGAL LLP

By:     */s/Thomas Touchie*
      Thomas Touchie

447 Broadway 2nd FL #388
New York, NY 10013
(347) 620-6423
thomas@studiolegal.xyz

*Attorney for Defendant Robert Everett Page IV*

27