‘

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------x

PHYLLIS SWAN,

Plaintiff,

Civil Action No. 1:22-cv-10406 (MKV)

-against-

**Oral Argument Requested**

ROBERT EVERETT PAGE IV

Defendant.

---------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c) DISMISSING THE FIRST AMENDED COUNTERCLAIM

**THE EUBANKS LAW FIRM, PLLC**
535 Dean Street, Suite 618
Brooklyn, New York 11217
(212) 390-8949

Renee Eubanks, Esq.
*Attorney for Plaintiff*

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .......... 1

**THE ALLEGATIONS OF THE FIRST AMENDED COUNTERCLAIM, TAKEN AS TRUE** .......... 2

**LEGAL STANDARD** .......... 4

**ARGUMENT** .......... 5

**I. THE COUNTERCLAIM'S CHAIN OF TITLE FAILS AT EVERY LINK** .......... 5

- A. That the Drawing was the artist's personal property is a bare assertion the counterclaim itself contradicts .......... 5
- B. Abandonment by the artist's estate is pleaded as a conclusion, on information and belief, and is contradicted by the appointment of an administrator .......... 5
- C. Neither Hughes's request nor Goode's compliance with it conveyed title to her .......... 6
- D. Goode conveyed no greater interest than she held .......... 7
- E. Possessors with stronger claims than Defendant's have failed in two comparable cases .......... 8

**II. THE DRAWING WAS PROPERTY OF THE BUSINESS, AND THE COUNTERCLAIM'S OWN ADMISSIONS ESTABLISH AS MUCH** .......... 8

- A. The face of the Drawing and Defendant's admissions establish that it was made for the business partnership operated as "Fertility" .......... 8
- B. That the business partnership was informal is not a defense .......... 9
- C. The counterclaim nowhere alleges that the proprietors relinquished the Drawing .......... 9
- D. On Rankin's death, his right in the Drawing vested in Plaintiff by operation of law .......... 9

**III. NEITHER GOOD FAITH NOR U.C.C. § 2-403(1) CAN SUPPLY WHAT THE COUNTERCLAIM OMITS** .......... 10

**IV. DEFENDANT CANNOT ASSERT RIGHTS DERIVED FROM THE ARTIST OR HIS ESTATE** .......... 12

**V. TO THE EXTENT THE COUNTERCLAIM IS READ TO ASSERT A TRANSFER FROM RANKIN, IT DOES NOT PLEAD AN INTER VIVOS GIFT** .....12

A. No donative intent is pleaded, because nothing is alleged to have been communicated .....13

B. No delivery from Rankin is pleaded, and no writing exists to invoke the presumption that would otherwise be available .....13

**VI. THE COUNTERCLAIM IS IRRECONCILABLE WITH ITSELF AND WITH DEFENDANT'S PRIOR ACCOUNTS** .....14

A. Defendant cannot plead lawful acquisition to establish title and wrongful possession to defeat Plaintiff's claim .....14

B. The counterclaim contradicts Defendant's own prior account of how he acquired the Drawing .....16

C. Defendant's own allegations foreclose the premise of his limitations defense .....18

**VII. DEFENDANT CANNOT PREVAIL BY ATTACKING PLAINTIFF'S TITLE; HE MUST PLEAD HIS OWN** .....21

**VIII. IN THE ALTERNATIVE, THE COURT SHOULD DECLINE TO ENTERTAIN THE COUNTERCLAIM** .....23

**CONCLUSION** .....24

## TABLE OF AUTHORITIES

### Cases

*Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85 (2d Cir. 2023) ........................23, 24
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................4, 11, 16
*Bakalar v. Vavra*, 619 F.3d 136 (2d Cir. 2010) ..................................................................11
*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145 (2d Cir. 2014)..................17
*Brash v. Richards*, 195 A.D.3d 582 (2d Dep't 2021)...............................................................21
*Favourite Ltd. v. Cico*, 42 N.Y.3d 250 (2024)......................................................................21
*Fils-Aime v. Ryder TRS, Inc.*, 40 A.D.3d 917 (2d Dep't 2007)....................................................7
*Foulke v. N.Y. Consol. R.R. Co.*, 228 N.Y. 269 (1920) .........................................................2, 6, 7
*Gruen v. Gruen*, 68 N.Y.2d 48 (1986).......................................................................................13
*Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 463 (S.D.N.Y. 2009), aff'd, 403 F. App'x 575 (2d Cir. 2010).......................................................................................................15
*Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010) ......................................................................4
*Hoelzer v. City of Stamford*, 933 F.2d 1131 (2d Cir. 1991)...................................................6, 8
*Howard Univ. v. Borders*, 588 F. Supp. 3d 457 (S.D.N.Y. 2022) ....................................8, 15, 22
*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) ................................................4
*McLeod v. Jewish Guild for the Blind*, 864 F.3d 154 (2d Cir. 2017) ......................................5, 18
*Mirvish v. Mott*, 18 N.Y.3d 510 (2012) ..........................................................12, 13, 14, 24
*Nissan Motor Acceptance Corp. v. Scialpi*, 94 A.D.3d 1067 (2d Dep't 2012) ............................21
*Olivo v. Medvedeva*, 80 Misc. 3d 742 (Civ. Ct. N.Y. Cnty. 2022)................................................2
*Paterno v. Strimling*, 107 A.D.3d 1233 (3d Dep't 2013) ............................................................7
*Powell v. United States*, No. 19-cv-11351 (AKH), 2022 WL 1645545 (S.D.N.Y. May 24, 2022) .......................................................................................................................21
*Schoeps v. Andrew Lloyd Webber Art Found.*, 66 A.D.3d 137 (1st Dep't 2009) .........................12
*Simmons v. Safir*, 276 A.D.2d 544 (2d Dep't 2000)....................................................................7
*Sofsky v. Rosenberg*, 76 N.Y.2d 927 (1990) ..............................................................................14
*Solomon R. Guggenheim Found. v. Lubell*, 153 A.D.2d 143 (1st Dep't 1990), aff'd, 77 N.Y.2d 311 (1991).............................................................11, 12, 15, 19, 20, 21, 22, 23
*State v. Seventh Regiment Fund, Inc.*, 13 Misc. 3d 222 (Sup. Ct. N.Y. Cnty. 2006), aff'd, 51 A.D.3d 463 (1st Dep't 2008)...........................................................................................11
*Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523 (S.D.N.Y. 2008)..............................................17

### Statutes and Rules

Fed. R. Civ. P. 8(d) ..............................................................................................................18
Fed. R. Civ. P. 11 .................................................................................................................18
Fed. R. Civ. P. 12(c) ..........................................................................................................1, 4, 18

Fed. R. Civ. P. 12(d) ....................4
Fed. R. Evid. 801(d)(2)(A) ....................10, 18
Local Civil Rule 12.1 ....................4
N.Y. Partnership Law § 10(1) ....................9
N.Y. Partnership Law § 12(1) ....................5, 9
N.Y. Partnership Law § 20(2) ....................10, 11
N.Y. Partnership Law § 51(2)(b) ....................10, 11
N.Y. Partnership Law § 51(2)(d) ....................9
N.Y. Partnership Law §§ 62, 68 ....................10
N.Y. U.C.C. § 2-403(1) ....................2, 10, 11
28 U.S.C. § 1927 ....................18
N.Y. Exec. Order No. 202.8 (Mar. 20, 2020) ....................21

## PRELIMINARY STATEMENT

Defendant Robert Everett Page IV asks this Court to declare him the owner of a Jean-Michel Basquiat drawing titled *Isaia's Fertility* (the "Drawing"). A counterclaim seeking that declaration must plead an affirmative source of title. Accepting every well-pleaded allegation of the First Amended Counterclaim (Dkt. No. 63, "FACC") as true and drawing all inferences in Defendant's favor, it pleads none that the law recognizes.

Plaintiff accepts Defendant's pleaded allegations as true for purposes of this motion, as Rule 12(c) requires. She notes only, and does not argue here, that a number of them are inaccurate — some in small ways, such as the date of Isaia Rankin's death, and some at the heart of the pleading, such as the assertion that the Drawing was the artist's personal property rather than an asset of the business whose two proprietors are named on its face. Those matters are for discovery. The point of this motion is that the counterclaim fails even if every word of it were true.

Defendant's chain of title has four links, and each fails. He alleges that (1) the Drawing was the artist's personal property; (2) the artist's estate abandoned it; (3) Jennifer Goode took lawful possession of it when Andy Warhol's business manager asked her to clear the artist's rented apartment; and (4) Goode gave it to him. (FACC ¶¶ 13, 24, 26–27, 42, 45.) The first link is contradicted by Defendant's own admissions that the artist made the Drawing to reflect Rankin's business and wrote "Proprietors Isaia Rankin Phyllis Swan" on its face. (FACC ¶¶ 10–11.) The second is a legal conclusion pleaded on information and belief, and is inconsistent with the appointment of an administrator charged with collecting the estate's assets. (FACC ¶¶ 22, 24.) The third fails because the landlord's representative who asked Goode to clear the apartment

had no power to convey a tenant's chattels. (FACC ¶¶ 25–26.) And the fourth fails because Goode could convey no more than she held — while Defendant's allegation that he paid nothing forecloses U.C.C. § 2-403(1), which protects only a good faith purchaser *for value*. (FACC ¶ 29.)

Finally, nowhere does the counterclaim allege that Rankin, Plaintiff, or their business, Fertility, ever relinquished the Drawing. The abandonment it pleads is the artist's estate's — the wrong party's interest — and no fact is pleaded showing that even the estate abandoned anything. Abandonment is not presumed; it requires the owner’s intent to abandon and an overt act. *See Foulke v. N.Y. Consol. R.R. Co.*, 228 N.Y. 269, 273 (1920); *Olivo v. Medvedeva*, 80 Misc. 3d 742, 749–50 (Civ. Ct. N.Y. Cnty. 2022).

## THE ALLEGATIONS OF THE FIRST AMENDED COUNTERCLAIM, TAKEN AS TRUE

For purposes of this motion only, Plaintiff will treat the following allegations as true.

1. Rankin operated informally under the name “Fertility” and this business was not incorporated or formally organized. (FACC ¶ 9.)
2. Rankin and the artist collaborated, and the artist created designs “intended to reflect Rankin's business vision.” The Drawing was created as a sketch depicting Rankin's East Village apartment store. (FACC ¶ 10.)
3. The artist wrote “Proprietors Isaia Rankin Phyllis Swan” on the Drawing. (FACC ¶ 11.)
4. The Drawing “remained the personal property of Basquiat from the time of its creation until his death.” (FACC ¶ 13.)
5. Defendant arrived in New York in 1985 and was hired by Rankin as an employee. (FACC ¶¶ 14–15.)

6. The artist died intestate on August 12, 1988, and his father was appointed administrator of his estate. (FACC ¶ 22.)

7. The artist's family took his paintings and other valuable works, leaving the remaining contents of the apartment. (FACC ¶ 23.)

8. “On information and belief,” the family and estate “abandoned and left unclaimed” the remaining effects, including the Drawing. (FACC ¶ 24.)

9. Fred Hughes, Warhol's business manager, acting for the Warhol estate as landlord, asked Goode to clear the apartment. (FACC ¶ 25.)

10. “At Hughes's instruction, Goode cleared the apartment and thereby took lawful possession of its abandoned, unclaimed contents.” (FACC ¶ 26.)

11. Goode and Jenny Lumet delivered the Drawing to Defendant in the spring or early summer of 1989. (FACC ¶ 27.)

12. Defendant received the Drawing “without paying consideration for it and without any expectation of compensation or exchange,” and not pursuant to any caregiving arrangement. (FACC ¶ 29.)

13. “Page acquired title to the Drawing upon receiving it from Goode.” (FACC ¶ 42.)

14. Goode “took lawful possession of the Drawing and transferred it to Page,” who “has held the Drawing openly since 1989 and has always maintained a claim of right to it.” (FACC ¶ 45.)

15. Rankin died on July 11, 1989. (FACC ¶ 30.)[1]

16. Defendant “is not a good faith purchaser of the Drawing.” (FACC ¶ 42.)

[1] Isaia Rankin’s date of death was June 28, 1989 per Plaintiff and the New York Times published article. The Court may take judicial notice that the date the article was published was July 11, 1989.

Defendant has elsewhere represented that Rankin gave him the Drawing as a "thank you" for the care Defendant provided during Rankin's illness. (FAC ¶¶ 41, 56; Dkt. No. 17; Dkt. No. 54, Ex. 3.) The counterclaim now denies that account. (FACC ¶ 29.)

**LEGAL STANDARD**

A Rule 12(c) motion is decided on the pleadings, documents attached to or incorporated in them, and matters subject to judicial notice, under the standard applicable to Rule 12(b)(6). *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011); *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Well-pleaded facts are accepted and inferences drawn in the non-movant's favor. Legal conclusions are not, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

That distinction governs this motion. Several of the counterclaim's materially essential allegations — that the Drawing "remained the personal property" of the artist, that his estate "abandoned" its contents, that Goode "thereby took lawful possession," and that Defendant "acquired title" on receipt — are characterizations of legal effect rather than statements of fact. (FACC ¶¶ 13, 24, 26, 42, 45.) Legal characterizations are not facts entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678.

Plaintiff relies solely on the pleadings, documents attached to or incorporated in them, and matters subject to judicial notice; the exhibits to the accompanying Declaration are filings in this action. She does not request conversion of this motion under Rule 12(d). Local Civil Rule 12.1 therefore does not apply: it governs motions against a party proceeding *pro se* that rely on matters outside the pleadings, and notice that Defendant is represented by counsel was provided on April 22, 2026.

The liberal construction afforded *pro se* submissions, which the Court applied to Defendant's earlier motion (Op. at 4, citing *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017)), does not apply to the counseled pleadings at issue here. (Dkt. Nos. 51, 63.)

## ARGUMENT

### I. THE COUNTERCLAIM'S CHAIN OF TITLE FAILS AT EVERY LINK.

#### *A. That the Drawing was the artist's personal property is a bare assertion the counterclaim itself contradicts.*

Paragraph 13 asserts that the Drawing "remained the personal property of Basquiat from the time of its creation until his death." Nothing is pleaded in support. What is pleaded points the other way: the artist created the Drawing collaborating with Rankin to reflect Rankin's business vision, as a depiction of Rankin's store, and wrote the names of the business' two proprietors on its face. (FACC ¶¶ 10–11.) Property acquired on account of a partnership is partnership property. N.Y. Partnership Law § 12(1). That the artist made the Drawing does not make it his, and nothing more is pleaded.

Defendant's only factual basis for the assertion is that the Drawing was found in the artist's apartment many years later. But an object's physical location does not establish who owns it — that is the premise of every replevin action, and of Defendant's own theory, since he claims title to a chattel he does not physically hold. He also pleads that he arrived in New York in 1985, which would be after the Drawing's creation (FACC ¶¶ 1, 14), so he pleads no basis for personal knowledge of its ownership or custody at any relevant time.

***B. Abandonment by the artist's estate is pleaded as a conclusion, on information and belief, and is contradicted by the appointment of an administrator.***

"[A]bandonment of property is the relinquishing of all title, possession or claim to or of it — a virtual intentional throwing away of it. It is not presumed. Proof supporting it must be direct or affirmative or reasonably beget the exclusive inference of the throwing away." *Foulke*, 228 N.Y. at 273. The inquiry turns on the *owner's intent*, not on where the object came to rest. In *Hoelzer v. City of Stamford*, the Second Circuit rejected a restorer's claim that a city had abandoned murals it knowingly discarded as trash and never sought to recover, because nothing showed the city intended to relinquish them. 933 F.2d 1131 (2d Cir. 1991). If discarding property in the trash does not establish abandonment, the allegations here fall far short.

Paragraph 24 pleads that the artist's family and estate "abandoned and left unclaimed" the remaining effects — "on information and belief," and supported only by the assertion that no one later inquired. That is a legal conclusion resting on an absence of evidence, and the qualifier concedes that Defendant has no source for it.

Inaction is not abandonment. And Defendant pleads the fact that forecloses the theory: the artist died intestate and his father was appointed administrator of his estate. (FACC ¶ 22.) A decedent's personal property vests in the fiduciary, who is charged with collecting and administering it. A fiduciary's failure to inventory items of no apparent value is neither an intent to relinquish title nor an overt act effecting one. Nothing in the pleading suggests the administrator ever formed such an intent, and nothing suggests he had authority to abandon estate assets even if he had wished to. The administrator died in 2013.[2]

[2] The court may take Judicial Notice that Gérard Basquiat died on July 7, 2013

### *C. Neither Hughes's request nor Goode's compliance with it conveyed title to her.*

Paragraph 26 alleges that "[a]t Hughes's instruction, Goode cleared the apartment and *thereby* took lawful possession of its abandoned, unclaimed contents." The word "thereby" carries the whole allegation and cannot bear the weight. Hughes acted for the *Warhol* estate as the artist's landlord, which "was eager to recover possession of the apartment." (FACC ¶ 25.) A landlord's interest is in the premises; it has no interest in a tenant's chattels and can convey none. A request to clear a space is not a gift of its contents, and Goode, who was under no obligation to clear the apartment, acquired no right by doing so.

If anything, the instruction cuts against Defendant rather than for him. New York recognizes that a principal-agent relationship may exist even where the agent is a volunteer, where the agent acts on the principal's behalf and subject to the principal's control. *Paterno v. Strimling*, 107 A.D.3d 1233, 1235 (3d Dep't 2013); *Fils-Aime v. Ryder TRS, Inc.*, 40 A.D.3d 917, 917–18 (2d Dep't 2007). Accordingly, one who takes possession of property at another's request, on his behalf, and at his instruction takes for that person, not for herself. On the allegations pleaded, Goode acted at the direction of the Warhol estate's representative in performing a task for the Warhol estate. Whatever she came into possession of in the course of that task, she did not come into possession of it in her own right.

The abandonment allegation does not close the gap. Abandoned property "is owned by him who takes it into his ownership." *Foulke*, 228 N.Y. at 273. Legally abandoned property thus vests in a person who takes possession of it with the intent to claim it as their own — not in a person who removes it at a third party's request in order to clear a space. *See id.*; *Simmons v. Safir*, 276 A.D.2d 544, 545 (2d Dep't 2000) (finding a person relying on abandonment by a bailee could not be a finder in her own right). Paragraph 26 alleges no such intent on Goode's

part, and ¶ 27 alleges the opposite: she wished to pass the Drawing to someone who would find it meaningful. Her possession, likewise, derived from the landlord's. *See Simmons*, 276 A.D.2d at 545; *see also Foulke*, 228 N.Y. at 275 (one who carries away property left on another's premises, intending to deliver it to its owner, is "a mere custodian of it for the owner").

### *D. Goode conveyed no greater interest than she held.*

A transferor conveys only what she has. Defendant pleads that Goode found the Drawing while clearing an apartment and passed it to him because she "wished to give the Drawing to someone who would find it meaningful." (FACC ¶¶ 26–27.) He pleads no fact establishing that she held title. His legal conclusion that he "acquired title to the Drawing upon receiving it from Goode" (FACC ¶ 42) therefore rests on nothing but the assertion itself.

### *E. Possessors with stronger claims than Defendant's have failed in two comparable cases.*

Two authorities describe possessors better situated than Defendant, and in each the possessor lost. The restorer in *Hoelzer* had the stronger abandonment case: the city knowingly discarded the murals as trash, and he preserved them at his own expense for years while the city never sought their return — yet he took no title, because abandonment turns on the owner's intent. 933 F.2d 1131. Defendant pleads no discarding and no overt act, only that valuables were removed and the remainder left behind, and he pleads even that on information and belief. (FACC ¶¶ 23–24.) The possessors in *Howard University v. Borders* had the stronger acquisition case: they received the drawing as a gift from a family friend and held it openly for some forty-five years, yet failed, because the burden of establishing rightful ownership was theirs. 588 F. Supp. 3d 457 (S.D.N.Y. 2022). Defendant can clear neither hurdle: he knew none of the

participants when the Drawing was made, and his only witness to the transfer knows nothing of its origin.

## II. THE DRAWING WAS PROPERTY OF THE BUSINESS, AND THE COUNTERCLAIM'S OWN ADMISSIONS ESTABLISH AS MUCH.

### *A. The face of the Drawing and Defendant's admissions establish that it was made for the business partnership operated as "Fertility."*

Property brought into the partnership or acquired on account of the partnership is partnership property. N.Y. Partnership Law § 12(1). Defendant admits the Drawing was created to reflect Rankin's business vision, depicts Rankin's store, and bears the inscription "Proprietors Isaia Rankin Phyllis Swan." (FACC ¶¶ 10–11.) Plaintiff alleges she and Rankin opened and operated the business together. (FAC ¶¶ 10–12, 20.)

### *B. That the business partnership was informal is not a defense.*

Paragraphs 9 and 11 emphasize that Fertility "was not incorporated or otherwise formally organized as a business entity" and was "merely a creative concept." A general partnership requires no formalities. It is "an association of two or more persons to carry on as co-owners a business for profit." N.Y. Partnership Law § 10(1). No writing, filing, or incorporation is required, and Defendant cannot impose on Plaintiff a standard of formality the law does not.

### *C. The counterclaim nowhere alleges that the proprietors relinquished the Drawing.*

Every abandonment allegation in the counterclaim concerns the *artist's* estate. (FACC ¶¶ 24, 26, 42, 45.) There is no allegation that Rankin, Plaintiff, or the business ever intended to relinquish the Drawing or committed any act to that effect. Defendant's theory abandons the wrong party's interest, and the omission is not curable, because Plaintiff alleges the opposite: that she believed she still had the Drawing, searched for it, and could not find it. (FAC ¶¶ 25–29.)

### D. *On Rankin's death, his right in the Drawing vested in Plaintiff by operation of law.*

"On the death of a partner his right in specific partnership property vests in the surviving partner or partners." N.Y. Partnership Law § 51(2)(d). Rankin's death dissolved the partnership and vested in Plaintiff, as surviving partner, both the right in specific partnership property and the exclusive authority to wind up the firm's affairs and collect its assets. N.Y. Partnership Law §§ 62, 68. Separately, no single partner could have conveyed the Drawing during Rankin's life: an act not apparently for carrying on the business in the usual way does not bind the partnership absent the other partner's authorization, *id.* § 20(2), and a partner's right in specific partnership property "is not assignable except in connection with the assignment of rights of all the partners in the same property," *id.* § 51(2)(b).

## III. NEITHER GOOD FAITH NOR U.C.C. § 2-403(1) CAN SUPPLY WHAT THE COUNTERCLAIM OMITS.

One misstatement should be corrected at the outset. Paragraph 41 describes the Court as having found Defendant a plausible good faith purchaser "because Swan alleged that Page received the Drawing in exchange for caretaking services provided to Rankin." *Plaintiff has never alleged that*. What she pleaded, and what the Opinion recites, is that *Defendant claimed* Rankin gave him the Drawing in exchange for the care he provided during Rankin's illness. (Op. at 2, citing FAC ¶¶ 41, 56.) Those are Defendant's own representations — to this Court, to Sotheby's, and to a published interviewer (FAC ¶¶ 41, 56; Dkt. No. 54, Ex. 3; Dkt. No. 17) — offered against him, Fed. R. Evid. 801(d)(2)(A), and they are the evidence of consideration on which the Court's holding rests.

Plaintiff has never contended that any transfer from Rankin to Defendant was authorized or effective. Her position throughout has been that Rankin, acting alone, had no power to convey partnership property, whatever Defendant gave or did in return. (FAC ¶¶ 40, 64, 104, 123.) She took that position in her first letter to Sotheby's, before any litigation: Rankin "would have absolutely no legal authority, in his capacity as an individual, to gift the Work to Mr. Page" and "no legal authority to gift the Work, in his business capacity, without Ms. Swan's consent." (Dkt. No. 10-2.) For the same reason, ¶ 29 does not accomplish what it evidently intends. It denies an *agreement* and denies that Defendant *paid* consideration, but consideration is either a benefit to the promisor or a detriment to the promisee, *State v. Seventh Regiment Fund, Inc.*, 13 Misc. 3d 222, 228 (Sup. Ct. N.Y. Cnty. 2006), *aff'd*, 51 A.D.3d 463 (1st Dep't 2008) — no bargain or payment is required. And the Court's contingency was framed as a matter for proof: "should discovery reveal" that Defendant is not a good faith purchaser. (Op. at 9.) A party cannot satisfy a discovery-dependent condition by pleading its conclusion, and ¶ 42's assertion is a legal characterization not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678.

New York protects the true owner "even if [the property] is in the possession of a good-faith purchaser for value." *Bakalar v. Vavra*, 619 F.3d 136, 141 (2d Cir. 2010) (quoting *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 317 (1991)). Innocence brings a possessor within the demand-and-refusal rule and so affects when a claim accrues. It does not create title.

The one provision that can cure a defect in a transferor's title is unavailable to Defendant by the terms of his own pleading. Section 2-403(1) provides that a person with *voidable* title may transfer good title to a good faith purchaser *for value*. *See Solomon R. Guggenheim Found. v. Lubell*, 153 A.D.2d 143, 152–53 (1st Dep't 1990), *aff'd*, 77 N.Y.2d 311 (1991). Defendant pleads that he received the Drawing "without paying consideration for it and without any expectation of

compensation or exchange," and that he "is not a good faith purchaser." (FACC ¶¶ 29, 42.) He is therefore not a purchaser for value, and § 2-403(1) does not reach him. In any event the provision presupposes a transferor holding voidable title; §§ 20(2) and 51(2)(b) describe an absence of power in which title could never have legally passed which would make a title transfer void ab initio, rather than a voidable conveyance, thereby leaving nothing "voidable" for the provision to operate upon.

The converse proposition is equally settled and disposes of any suggestion that the passage of thirty years assisted Defendant. Absent a statute conferring title by lapse of time, "the relative possessory rights of the parties cannot depend upon the mere lapse of time, no matter how long." *Lubell*, 153 A.D.2d at 149–50. *Accord Mirvish v. Mott*, 18 N.Y.3d 510, 519–20 (2012).

## IV. DEFENDANT CANNOT ASSERT RIGHTS DERIVED FROM THE ARTIST OR HIS ESTATE.

Count I rests on the premise that the Drawing "remained his personal property until his death in 1988" and thereafter passed out of his estate. (FACC ¶ 45.) To the extent Defendant claims *through* the artist, he may not: a stranger to a decedent's estate — neither a personal representative, a beneficiary, nor a person interested in the estate — lacks capacity to assert claims to property on the decedent's behalf. *Schoeps v. Andrew Lloyd Webber Art Found.*, 66 A.D.3d 137 (1st Dep't 2009). Defendant pleads no relationship to that estate and pleads that its administrator is a person other than himself. (FACC ¶ 22.)

Defendant may, like any defendant, deny Plaintiff's allegations and put her to her proof. What he may not do is build an affirmative claim of ownership on rights belonging to the artist's estate — the only foundation his pleading offers.

## V. TO THE EXTENT THE COUNTERCLAIM IS READ TO ASSERT A TRANSFER FROM RANKIN, IT DOES NOT PLEAD AN INTER VIVOS GIFT.

The counterclaim's chain of title runs through Goode, not Rankin. (FACC ¶¶ 42, 45.) Yet it twice invokes Rankin: Defendant kept the Drawing "based on his relationship with Rankin and his understanding that Rankin wanted him to keep it," and Lumet supplied his name because he "had worked closely with Rankin." (FACC ¶¶ 27–28.) Defendant's pre-answer submission addressed the elements of an inter vivos gift from Rankin in detail. (Dkt. No. 39.) Plaintiff therefore addresses the theory, without conceding that the amended pleading states it.

A valid inter vivos gift requires donative intent, delivery, and acceptance, each established by clear and convincing evidence. *Gruen v. Gruen*, 68 N.Y.2d 48, 53 (1986); *Mirvish v. Mott*, 18 N.Y.3d 510, 518 (2012). On Defendant's own allegations, none of the three are pleaded.

### *A. No donative intent is pleaded, because nothing is alleged to have been communicated.*

Donative intent is the intent of the *donor*, manifested by the donor. What ¶ 28 pleads is Defendant's own "understanding" of what Rankin wanted — an allegation about the state of mind of the recipient. And the counterclaim forecloses any manifestation: Defendant alleges that Rankin was hospitalized for approximately four months over the summer of 1989 and was "largely nonverbal and incommunicative" throughout, and that the Drawing was delivered to him in the spring or early summer of 1989 — that is, during that hospitalization. (FACC ¶¶ 20, 27.) Defendant does not allege a single word, gesture, or writing from Rankin concerning the Drawing at any time.

Nor does the pleading supply any reason Rankin would have held the wish attributed to him. The explanation Defendant gave the Court, Sotheby's, and a published interviewer was that Rankin wished to thank him for the care he provided during his illness. (FAC ¶¶ 41, 56; Dkt. No. 54, Ex. 3; Dkt. No. 17.) Paragraph 29 now denies that account. Having removed the stated basis for the intention, Defendant is left asserting the intention alone.

### ***B. No delivery from Rankin is pleaded, and no writing exists to invoke the presumption that would otherwise be available.***

Delivery must divest the donor of dominion and vest it in the donee. Defendant alleges that Goode and Lumet delivered the Drawing to him. (FACC ¶ 27.) He does not allege that Rankin ever possessed the Drawing, delivered it, or directed anyone to deliver it. New York recognizes one route by which a donee already holding a chattel may establish delivery after the donor's death: possession of a clear and unambiguous gift instrument raises a presumption of delivery, and the Dead Man's Statute poses no impediment to reliance on that presumption. *Mirvish*, 18 N.Y.3d at 519–20 (citing *Sofsky v. Rosenberg*, 76 N.Y.2d 927 (1990)). No instrument, writing, or document of any kind is pleaded in Defendant’s counterclaim.

*Mirvish* confirms the deficiency. The Court of Appeals upheld a gift to a longtime companion who had cared for the donor through a lengthy illness, but because the donor's intent appeared on the face of a written gift instrument and her capacity was unquestioned. *Id.* at 519–20. Defendant pleads neither: he has no writing, and he pleads that the putative donor was nonverbal and incommunicative. The pleading does not allege a gift, and its own chronology leaves no moment at which one could have occurred.

## VI. THE COUNTERCLAIM IS IRRECONCILABLE WITH ITSELF AND WITH DEFENDANT'S PRIOR ACCOUNTS.

### *A. Defendant cannot plead lawful acquisition to establish title and wrongful possession to defeat Plaintiff's claim.*

Paragraph 42 asserts that Defendant "is not a good faith purchaser," an assertion evidently directed at the Court's observation that a mere recipient of an unauthorized gift would fall outside the demand-and-refusal rule. (Op. at 9.) Yet the same paragraph, and ¶¶ 26 and 45, plead that Goode took *lawful* possession, that Defendant "acquired title" on receipt, and that he has "always maintained a claim of right."

Those allegations place Defendant squarely within the rule he seeks to escape. The Appellate Division was clear in *Guggenheim*, in the decision the Court of Appeals affirmed: the demand-and-refusal requirement applies to a good-faith purchaser "*or indeed anyone else whose possession is not tortious*," because such a possessor commits no wrong, as a matter of substantive law, until advised of the owner's claim and given an opportunity to return the chattel. *Lubell*, 153 A.D.2d at 147. The only exception the Court of Appeals recognized is the thief, in whose hands the period runs from the taking. *Lubell*, 77 N.Y.2d at 317–18. The rule has accordingly been applied to recipients by gift. In *Howard University*, the possessors received the artwork as a gift, paid nothing for it, and took it from a donor the plaintiff alleged had no authority to give it; the claim was nonetheless timely, because it did not accrue until demand was made and refused. 588 F. Supp. 3d at 468–70, 477. *Accord Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 463, 477, 483 (S.D.N.Y. 2009) (applying the rule to a painting acquired by gift), *aff'd*, 403 F. App'x 575 (2d Cir. 2010). The authorities cited at pages 9 and 10 of the Opinion are not to the contrary: *New York City Transit Authority*, *In re King*, and *In re Estate of Loew* each involved a transfer the court characterized as *unlawful at its inception*, so that possession was

wrongful from the moment of conveyance and demand would have been futile. Defendant has expressly pleaded himself out of that category.

Defendant cannot have it both ways. Lawful acquisition is the foundation of his title claim, but tortious possession must be the predicate of his limitations defense. Whichever he keeps, the other fails.

A second inconsistency runs through the same paragraphs. The counterclaim locates the source of title in Goode (FACC ¶¶ 26, 42, 45), yet explains Defendant's retention of the Drawing by Rankin's wishes: he kept it "based on his relationship with Rankin and his understanding that Rankin wanted him to keep it." (FACC ¶ 28.) A person who has acquired title needs no one's permission to keep what is his. That Defendant pleads Rankin's wishes at all — as the reason he retained the Drawing — indicates that Rankin, not Defendant, was the person for whom it was understood to be destined. The surrounding allegations point the same way: Goode wanted it to go to "someone who would find it meaningful," and Lumet supplied Defendant's name because he "had worked closely with Rankin and shared a deep connection with him." (FACC ¶ 27.) And the pleading's verb is one of conveyance to a destination: Goode and Lumet "delivered the Drawing to Page," who then "intended to keep it." (FACC ¶¶ 27–28.)

Plaintiff does not ask the Court to resolve on the pleadings what the participants intended. The point is narrower: ¶¶ 28 and 30 cannot be reconciled with ¶¶ 42 and 45. Either title came from Goode, and Rankin's wishes are surplusage, or Defendant's retention depended on what Rankin wanted, and title did not come from Goode — nor from Rankin, for the reasons in Points III and V. None of this questions Defendant's good faith belief regarding his possession, which may be genuine; his error is that good faith possession does not confer title.

### *B. The counterclaim contradicts Defendant's own prior account of how he acquired the Drawing.*

Plaintiff does not ask the Court to strike any allegation. She asks it to apply the ordinary plausibility standard with the full record before it. Plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and nothing requires a court to read a pleading as though the same party had said nothing before.

Two further principles apply, and this Court has applied both in this very action. First, although factual allegations are normally accepted as true, "that principle does not apply to general allegations that are contradicted by more specific allegations" in the same pleading. *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–52 (2d Cir. 2014). Second, a court "need not accept as true an allegation that is contradicted by documents on which the complaint relies." *Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008). The Court invoked both in dismissing Plaintiff's original claims, declining to credit a general allegation that conflicted with more specific ones and an allegation that conflicted with an exhibit to the pleading. (Dkt. No. 27 at 6 n.8, 9 n.10.) The same rules govern Defendant's pleading.

They dispose of the two allegations on which Defendant's chain of title depends. His general assertion that he "acquired title" and holds the Drawing under a "claim of right" (FACC ¶¶ 42, 45) is contradicted by his specific allegations of how he came to hold it: that it was found by a person clearing a rented apartment at a landlord's request, and passed to him because of his connection to Isaia Rankin. (FACC ¶¶ 25–28.) And his assertion that the Drawing "remained the personal property of Basquiat" (FACC ¶ 13) is contradicted by the Drawing itself, which

Defendant admits bears the inscription "Proprietors Isaia Rankin Phyllis Swan" and which he admits was made to reflect Rankin's business. (FACC ¶¶ 10–11; Dkt. No. 10-1.)

Defendant told this Court in his pre-answer letters, told Sotheby's, and told a published interviewer that Rankin gave him the Drawing as a "thank you" for the care he provided during Rankin's illness (FAC ¶¶ 41, 56; Dkt. No. 54, Ex. 3; Dkt. No. 17 at 1), and before any litigation Sotheby's confirmed to Plaintiff's counsel that he had "asserted that the Work was gifted to him by Isaia Rankin." (Dkt. No. 10-2.) His pre-answer submission applied the elements of an inter vivos gift to that transfer. (Dkt. No. 39.) After this Court observed that a recipient who gave consideration would be a good faith purchaser subject to the demand-and-refusal rule (Op. at 7–9), the amended pleading denied the caregiving exchange (FACC ¶ 29) and relocated the chain of title to an abandonment by the artist's estate never mentioned in six years of litigation, supported by two witnesses named for the first time in Dkt. No. 63. (FACC ¶¶ 24–27, 42.) These are not competing legal characterizations of one transaction but incompatible accounts of events within Defendant's personal knowledge. Rule 8(d) permits a party uncertain which of two things occurred to plead both as alternatives; it does not authorize advancing one account, abandoning it when it proves unhelpful, and substituting another without explanation.

Amendment does not erase the earlier statements; they are Defendant's own, offered against him. Fed. R. Evid. 801(d)(2)(A). Nor does *McLeod* help him: liberal construction concerns legal expression, not a litigant's account of his own experience, and Defendant has been represented throughout the pleading stage.

Plaintiff does not move for sanctions and does not ask the Court to resolve credibility on a motion under Rule 12(c). She notes the sequence because it bears on the plausibility of the allegations now pleaded, and respectfully reserves all rights under Rule 11, 28 U.S.C. § 1927,

and the Court's inherent authority pending discovery into the factual basis for the allegations in FACC ¶¶ 24 and 26.

### *C. Defendant's own allegations foreclose the premise of his limitations defense.*

The Fifth Defense of the Answer asserts that Plaintiff "made a demand upon Page and Page refused that demand more than three years before" December 8, 2022. (Dkt. No. 51, Fifth Defense.) Plaintiff does not seek judgment on that defense by this motion. She notes only that Defendant's own pleadings foreclose its premise, so that it supplies no alternative ground on which the Court might decline to reach the counterclaim.

Demand is a substantive element of the cause of action for the specific reason that a good faith possessor is a non-tortious possessor that "commits no wrong, as a matter of substantive law, until he has first been advised of the plaintiff's claim to possession *and given an opportunity to return the chattel*." *Lubell*, 153 A.D.2d at 147. A possessor who does not hold the chattel and has no right to its immediate possession cannot be given that opportunity and cannot refuse what he is unable to deliver.

Defendant alleges that Sotheby's sold the Drawing on his behalf on October 2, 2019, that Plaintiff contacted Sotheby's in early October, and that Sotheby's "subsequently rescinded the sale and took possession." (FACC ¶¶ 34–35; Dkt. No. 51 ¶¶ 39, 48.) On his own chronology, Sotheby's repossession *postdated* Plaintiff's intervention, and he pleads no fact suggesting that he held the Drawing, or had any right to its immediate possession, between October 2 and December 8, 2019. Plaintiff's pleading is to the same effect, as this Court has recited: the auction purchaser still held the Drawing as of December 12, 2019. (Op. at 8, citing FAC ¶¶ 68, 74.)

The pleadings reflect one communication before December 8, 2019, a November 14, 2019 letter that bears on this question, and it confirms the point in two independent respects.

First, the letter was not a demand at all, and certainly not one upon Defendant. It says so on its face. It states that "in order to further her legal claim Ms. Swan must assert a demand to have the Work returned to her"; that "[t]o properly effectuate that demand, Ms. Swan must have the name and address of the individual and/or entity that is in possession of the Work (the 'Party In Possession') or the name of the Party in Possession's legal representative"; and it asks Sotheby's to "provide the name of the Party In Possession or its legal representative as soon as possible." (Dkt. No. 10-2.) A letter announcing that a demand has yet to be made, and requesting the information needed to make it, is not the demand. This Court read the letter the same way on remand, describing it as a "demand for the identity of the buyer so she could demand the return of the Drawing from that individual." (Op. at 8 n.4; FAC ¶¶ 65–66.)

Nor was the Party In Possession the Defendant. As shown above, the purchaser then held the Drawing. A request that Sotheby's identify whoever held the work, so that a demand could be directed to that person, was not a demand upon Defendant, who held nothing and had no right to immediate possession of anything.

Second, and in any event, the response was not a refusal. Sotheby's answered that the consignor had requested that the sale be rescinded and that it would hold the Drawing while the parties resolved ownership. (FAC ¶¶ 65–66.) A consignor's request that his own sale be undone is an acknowledgment of the owner's claim, not a rejection of it. The Court accordingly held that the exchange did not show "that Swan demanded the return of the Drawing from Page, and Page refused, more than three-years before her December 8, 2022 lawsuit." (Op. at 8 n.4.) Accrual requires both a demand and a refusal; the November 14 exchange supplies neither as to Defendant.

The Court's earlier description of the November 14 letter, in its opinion dismissing the claims against Sotheby's (Dkt. No. 27), addressed a different defendant and a different accrual question. The Second Circuit vacated that dismissal as to Defendant, and on remand the Court read the letter in the way its own terms require.

Nor do the pleadings describe any postponement of the demand. *See Lubell*, 153 A.D.2d at 147. They describe an owner who learned of the auction after the fact, engaged continuously with the party holding the work, and demanded its return once that party declined to rescind — a shorter interval than the five months the museum took in *Guggenheim* itself. *Id.* at 145.

The Fifth Defense also fails for an independent reason. New York's COVID-19 executive orders "tolled all filing periods" from March 20, 2020 to November 3, 2020 — 228 days. *Favourite Ltd. v. Cico*, 42 N.Y.3d 250, 260 (2024); *see Brash v. Richards*, 195 A.D.3d 582 (2d Dep't 2021); *Powell v. United States*, No. 19-cv-11351 (AKH), 2022 WL 1645545, at *2 (S.D.N.Y. May 24, 2022) (applying the 228-day toll). A three-year period running on March 20, 2020 was extended accordingly, so this action, commenced December 8, 2022, is timely as to any claim that accrued on or after April 24, 2019. On Defendant's own allegations, the Drawing was not consigned until August 2019, and Plaintiff did not contact Sotheby's until that October. (FACC ¶¶ 34–35.) Whatever date Defendant assigns to a demand and refusal, the claim is timely.

## VII. DEFENDANT CANNOT PREVAIL BY ATTACKING PLAINTIFF'S TITLE; HE MUST PLEAD HIS OWN.

Much of the counterclaim is devoted to denying Plaintiff's interest — that she was never a partner, never had an ownership role, and was merely a paid salesperson. (FACC ¶¶ 11, 15, 19, 46.) Those allegations may be asserted as defenses. They cannot establish Defendant's ownership.

A claim to a chattel turns on relative title: which party holds the *superior* right. *Nissan Motor Acceptance Corp. v. Scialpi*, 94 A.D.3d 1067, 1068 (2d Dep't 2012). Defendant seeks a declaration that "all right, title, and interest" in the Drawing is "vested in Page." (FACC ¶ 49, Prayer ¶ (a).) That requires a source of title of his own, and the defect is not one of detail: it lies in the power of his transferor, be it Goode or Rankin, and in the absence of any allegation that the business ever gave up its interest, even if the Drawing was in Basquiat's possession. No amendment consistent with his current account can supply either.

***The alternative prayer for a declaration that Plaintiff has no title asks for relief the law does not permit.***

Defendant asks, in the alternative, for a declaration that Plaintiff "does not have legal title" and "no right, title, or interest" in the Drawing. (FACC ¶¶ 1, 46, 49, Prayer ¶ (a).) That request is either redundant or impermissible, and it fails either way.

It is redundant to the extent it restates a defense. Defendant may of course deny Plaintiff's allegations and put her to her proof; if she cannot establish a superior right (although *Lubell* and *Howard University* suggest she has met her prima facie threshold regarding that right), her claims fail. But that is the ordinary operation of the burden of proof, not an occasion for affirmative declaratory relief, and a counterclaim adds nothing to a denial.

To the extent the request seeks more — a judicial determination that a claimant's title is defective, untethered to any determination of who does own the chattel — it inverts the allocation New York has deliberately adopted. In *Guggenheim*, the Appellate Division held that a complaint alleging the plaintiff's ownership, the defendant's possession, and refusal on demand states every fact essential to recovery, and that the burden of proving the chattel was *not* stolen rests on the possessor. *Lubell*, 153 A.D.2d at 153. The court acknowledged that burden to be

onerous and placed it on the possessor because those who deal in chattels do so at their peril. *Id.* Defendant's alternative prayer asks this Court to defy *Lubell* and run that allocation in reverse.

The reasons New York adopted that allocation are the reasons it should not be undone here. The Court of Appeals declined to impose a duty of reasonable diligence on the true owner in part because placing the burden of locating stolen art on the owner would encourage illicit trafficking and make New York a haven for stolen cultural property. *Lubell*, 77 N.Y.2d at 320. And the Appellate Division held that, absent a statute conferring title by lapse of time, "the relative possessory rights of the parties cannot depend upon the mere lapse of time, no matter how long." 153 A.D.2d at 149–50. A rule under which a possessor who can establish no title of his own may nonetheless obtain a declaration that the owner has none either is a rule that rewards delay and the erosion of records. It is the outcome these authorities were written to prevent.

## VIII. IN THE ALTERNATIVE, THE COURT SHOULD DECLINE TO ENTERTAIN THE COUNTERCLAIM.

Even if the counterclaim stated a cognizable theory, the Court has discretion to decline to entertain it. Among the factors informing that discretion are whether the declaration will serve a useful purpose in clarifying or settling the legal issues, whether it would finalize the controversy, whether the remedy "is being used merely for procedural fencing," and whether there is a better or more effective remedy. *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023).

Two factors point the same way here. First, the alternative relief Defendant seeks would settle nothing. A declaration that Plaintiff has no title identifies no owner. It would also defeat the binding Stipulation to which Defendant is a signatory, by which the Claimants agreed to

"continue to adjudicate their claims to title to artwork directly between themselves" and Sotheby's agreed to hold the work pending an instruction "as to which Claimant the artwork is to be released to." (Stipulation ¶¶ 2–3.) A judgment declaring only that a claimant lacks title supplies no such instruction, and the Drawing would remain with Sotheby's indefinitely. That fails the first two *Admiral Insurance* factors. 57 F.4th at 99–100. Further, *Mirvish* rejected precisely that outcome: where the parties had agreed the work would be delivered to whoever was adjudicated its owner, leaving it undelivered meant "'The Cry' would be condemned to languish in escrow in perpetuity," which was "surely not what the parties intended." *Mirvish*, 18 N.Y.3d at 520.

Second, the Court may consider whether declaratory relief is sought to resolve genuine uncertainty about the parties' rights or for some other reason. *Admiral Ins.*, 57 F.4th at 99–100. As shown in Point VI.B, the factual basis of this counterclaim changed in response to the Court's rulings rather than to newly discovered facts. Plaintiff does not ask the Court to weigh credibility on this motion. She observes only that the Declaratory Judgment Act commits the decision whether to entertain a claim to the Court's discretion, and that a claim whose factual premises shift with the Court's rulings is not one the Act obliges it to hear.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment on the pleadings dismissing the First Amended Counterclaim and grant such other and further relief as is just and proper.

Dated: Brooklyn, New York
September 23, 2026

Respectfully submitted,
THE EUBANKS LAW FIRM, PLLC

By: /s/ Renee Eubanks
Renee Eubanks, Esq.
Attorney for Plaintiff/Counterclaim
Defendant Phyllis Swan