UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHYLLIS SWAN,<br><br>Plaintiff,<br><br>-against-<br><br>ROBERT EVERETT PAGE IV,<br><br>Defendant. | 1:22-CV-10406-MKV |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF AND COUNTERCLAIM DEFENDANT'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....... 1
FACTS ....... 2
LEGAL STANDARD ....... 4
ARGUMENT ....... 6
I. THE COUNTERCLAIM PLEADS A COMPLETE CLAIM OF TITLE ....... 6
A. Page Has Alleged That the Drawing Belonged to Basquiat ....... 6
B. Abandonment Is Well-Pleaded and Presents a Question of Fact ....... 7
C. Goode Took Possession of the Drawing and Delivered It to Page ....... 9
D. Page Pleads an Affirmative Source of Title Relative to Swan ....... 10
II. SWAN'S PARTNERSHIP THEORY RESTS ON FACTS PAGE HAS DENIED ....... 11
III. SWAN ATTACKS THEORIES THE COUNTERCLAIM DOES NOT PLEAD ....... 13
IV. THE COUNTERCLAIM IS INTERNALLY COHERENT ....... 15
A. Page's Chain of Title Does Not Depend on Being a Purchaser ....... 15
B. Swan Confuses Why Page Kept the Drawing With How He Acquired It ....... 17
V. SWAN'S ARGUMENT MUST REMAIN WITHIN THE COUNTERCLAIM ....... 18
A. Page's Extrinsic Statements Are Not Before the Court ....... 19
B. Page's Earlier Pro Se Statements Do Not Bind Him ....... 20
VI. THE FIFTH AFFIRMATIVE DEFENSE IS NOT BEFORE THE COURT ....... 21
VII. PAGE CAN PREVAIL BY ESTABLISHING A SUPERIOR INTEREST ....... 22
VIII. DECLINING DECLARATORY JURISDICTION WOULD BE PREMATURE ....... 23
CONCLUSION ....... 24

# TABLE OF AUTHORITIES

**Cases**

*Admiral Ins. Co. v. Niagara Transformer Corp*., 57 F.4th 85 (2d Cir. 2023) ....23

*Arista Recs., LLC v. Doe* 3, 604 F.3d 110 (2d Cir. 2010)....9

*Bakalar v. Vavra*, 619 F.3d 136 (2d Cir. 2010) ....16

*City of Almaty v. Ablyazov*, 2019 WL 1430155 (S.D.N.Y. Mar. 29, 2019)....4

*Cretaro v. Huntington*, 203 A.D.3d 1696 (4th Dep't 2022) ....8

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc*., 747 F.3d 145 (2d Cir. 2014)....20

*Foulke v. N.Y. Consol. R.R. Co.*, 228 N.Y. 269 (1920) ....7, 8, 9, 10

*Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 473 (S.D.N.Y. 2010)....17

*Hoelzer v. City of Stamford*, 933 F.2d 1131 (2d Cir. 1991)....7, 8, 9

*Holland v. City of New York*, 197 F. Supp. 3d 529 (S.D.N.Y. 2016) ....20

*Howard University v. Borders*, 588 F. Supp. 3d 457 (S.D.N.Y. 2022) ....8, 17

*Kyle v. Brenton*, 184 A.D.2d 1036 (4th Dep't 1992)....12

*Levi v. RSM McGladrey, Inc*., 2014 WL 4809942 (S.D.N.Y. Sept. 24, 2014)....21

*Lively v. WAFRA Inv. Advisory Grp., Inc*., 6 F.4th 293 (2d Cir. 2021) ....4, 5, 6, 18, 19, 21

*Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461 (S.D.N.Y. 2010) ....23

*MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118 (2007)....21

*Nissan Motor Acceptance Corp. v. Scialpi*, 94 A.D.3d 1067 (2d Dep't 2012)....22

*Okun v. Braunstein*, 172 A.D.2d 259 (1st Dep't 1991) ....12

*Samsung C&T Am., Inc. v. Tommy Bahama*, 2022 WL 624555 (S.D.N.Y. Mar. 3, 2022) ...4, 5, 19

*Schoeps v. Andrew Lloyd Webber Art Found*., 66 A.D.3d 137 (1st Dep't 2009)....14

*Solomon R. Guggenheim Found. v. Lubell*, 153 A.D.2d 143 (1st Dep't 1990) ....16

*Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311 (1991)....16, 22, 23

*Sriraman v. Patel*, 761 F. Supp. 2d 7 (E.D.N.Y. 2011) ....12

*State v. Seventh Regiment Fund, Inc*., 98 N.Y.2d 249 (2002) ....14, 16

*Swan v. Sotheby's Inc*., 2026 WL 836655 (S.D.N.Y. Mar. 26, 2026)....1, 13, 14, 16, 17, 22, 23

*Utica Nat'l Assurance Co v. Amazon.com*, 2025 WL 754125 (S.D.N.Y. Mar. 10, 2025) ....5

*Williams v. Citibank*, N.A., 565 F. Supp. 2d 523 (S.D.N.Y. 2008)....20

*Zuckerman v. Metropolitan Museum of Art*, 928 F.3d 186 (2d Cir. 2019)....17

**Statutes and Rules**

Fed. R. Civ. P. 12(b)(6)....4, 5

Fed. R. Civ. P. 12(c) ....................................................................................1, 4, 5, 18, 19
Fed. R. Civ. P. 12(d) ....................................................................................2, 20
Fed. R. Evid. 801(d)(2)(A) ....................................................................................2, 13
N.Y. Partnership Law § 12 ....................................................................................12
N.Y. Partnership Law § 20(2)....................................................................................13
N.Y. Partnership Law § 51(2)(b) ....................................................................................13
N.Y. Partnership Law § 51(2)(d) ....................................................................................13
N.Y. Partnership Law §§ 62, 68 ....................................................................................13
N.Y. U.C.C. § 2-403(1)....................................................................................13, 14

## PRELIMINARY STATEMENT

Six months ago, this Court denied Defendant Robert Page's motion to dismiss Plaintiff Phyllis Swan's conversion claim as untimely because the central issues in this case could not be resolved without discovery. *Swan v. Sotheby's Inc.*, 2026 WL 836655 (S.D.N.Y. Mar. 26, 2026). There are two issues: first, how Page came to possess the drawing known as *Isaia's Fertility* (the "Drawing") and second, whether Swan's alleged claim to it accrued in 1989 or in 2019. As to Page's own request for a declaration of ownership, the Court held that relief would be "inappropriate given the numerous issues of fact with respect to rightful ownership of the Drawing," and invited Page to plead a counterclaim. *Id.* at *6. Page has done so, and discovery has barely begun. Swan nonetheless asks the Court to settle these issues now, on the pleadings and in her favor, by obfuscating which facts Page has alleged and which he has denied.

Taken as pleaded, the Counterclaim states a complete chain of title. From its creation, the Drawing remained Jean-Michel Basquiat's personal property. After his death in 1988, his family removed everything of value from his rented apartment and abandoned the remainder. At the landlord's request, Basquiat's former girlfriend Jennifer Goode cleared the apartment, took possession of what remained, and gave the Drawing to Page, who kept it as his own and has held it openly ever since. Swan's answer is to relabel these allegations as legal conclusions, but the label does not stick: each is a well-pleaded fact that must be taken as true on this motion.

Throughout her motion, Swan inverts the applicable standard under Rule 12(c). At this early stage, it is Page whose allegations are taken as true, and Swan's that must give way where Page has denied them. Her central theory — that the Drawing was partnership property that vested in her when Isaia Rankin died — rests on three propositions found nowhere but in her own complaint: that a partnership existed, that she was a partner with Rankin, and that the Drawing belonged to the partnership. Page has denied all of this, along with the two allegations that would

put the Drawing in her hands at all: that she and Rankin kept the sketch after Basquiat drew it, and that it was among the papers left behind at the former location of the Fertility store.

Swan then takes aim at theories the Counterclaim does not advance: a cure of voidable title under the Uniform Commercial Code, a claim asserted on behalf of Basquiat's estate, and an *inter vivos* gift from Rankin. She argues the Counterclaim contradicts itself, then reaches outside the Counterclaim altogether. She points to Page's prior statements and to informal letters he filed while proceeding *pro se*, invoking Federal Rule of Evidence 801(d)(2)(A) while declining to convert her motion under Rule 12(d). She attacks Page's Fifth Affirmative Defense while conceding that she seeks no judgment on it. And she opposes Page's alternative request for a declaration that she holds no interest in the Drawing as improper, ineffective, or both, ignoring the fact that Page has pleaded an affirmative claim of his own. What remains is a genuine dispute between two claimants, which is precisely what the Declaratory Judgment Act exists to resolve — as this Court has already held in entertaining Swan's own declaratory claim.

This case will be decided on what discovery reveals: how the Drawing came into Page's hands, and whether Page gave anything in return for what he received. The Court declined to address these issues six months ago because the record could not yet support an answer. Nothing has changed. The motion should be denied.

## FACTS

On a motion for judgment on the pleadings directed at the Counterclaim, the well-pleaded allegations *of the Counterclaim* are taken as true. They are as follows.

**The Drawing belonged to Basquiat**. *Isaia's Fertility* is a small informal sketch Basquiat executed circa 1980–1985, depicting the East Village apartment from which Isaia Rankin then operated informally under the name "Fertility" — at that time "merely a creative concept" and not "incorporated or otherwise formally organized as a business entity" (Page's First Amended

Counterclaim ("FACC") ¶¶ 9–10). The sketch was never finalized, displayed, reproduced, or used in any promotional material of any of Rankin's businesses (FACC ¶¶ 11–12). It "was not a business asset of Fertility or of any other entity," and "remained the personal property of Basquiat from the time of its creation until his death" (FACC ¶ 13). Page — Isaia NYC's Director of Sales and Marketing and its primary press liaison, with "direct visibility into the company's promotional materials and business records" — never saw the Drawing or any reference to it in any business file, inventory, or promotional material (FACC ¶¶ 15–16).

**Basquiat's estate left the Drawing behind and never claimed it**. Basquiat died intestate on August 12, 1988, and his father was appointed administrator (FACC ¶ 22). His family took the paintings and other valuable works from his apartment, "leaving behind the remaining contents," among them the Drawing, and "abandoned and left unclaimed the personal effects that remained." No one from the family or estate ever inquired about the Drawing or sought its return in the more than three decades that followed (FACC ¶¶ 23–24).

**Goode took possession of the Drawing and delivered it to Page**. The Warhol estate, as landlord and acting through its representative Fred Hughes, asked Jennifer Goode to clear the apartment (FACC ¶ 25). "At Hughes's instruction, Goode cleared the apartment and thereby took lawful possession of its abandoned, unclaimed contents," including the Drawing (FACC ¶ 26). Goode "wished to give the Drawing to someone who would find it meaningful," and, with Jenny Lumet, who knew of Page's relationship to Rankin, delivered it to Page in or about the spring or early summer of 1989 (FACC ¶ 27). Page received it "without paying consideration for it and without any expectation of compensation or exchange" (FACC ¶ 29). He "intended to keep it as his own property." (FACC ¶ 28).

**Page has held the Drawing openly since he received it**. From 1989 until 2019 Page "held

the Drawing openly and continuously, without concealment," displaying it in his home, and he "has always maintained a claim of right to it" (FACC ¶ 31).

**Swan is a stranger to the Drawing**. Swan "was not Rankin's business partner in Fertility or in any other venture, whether formal or informal, and had no ownership or partnership interest in any of Rankin's businesses at any time" (FACC ¶¶ 11, 15). She was hired as a paid salesperson at the Spring Street pop-up store after it opened in or about 1989 — years after the Drawing was executed — and had "no prior involvement, formal or informal," with any of Rankin's business activities before then (FACC ¶ 19). In the thirty years Page held the Drawing openly, Swan "never once contacted Page nor raised any concern about the Drawing" (FACC ¶ 32).

## LEGAL STANDARD

A motion under Rule 12(c) is evaluated under the same standard as a motion under Rule 12(b)(6): the court "must accept the non-movant's pleading as true and decline to weigh competing allegations asserted by the moving party." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021). Three features of that standard are decisive here.

**First, the standard turns on which party is moving, not on which party is the plaintiff**. Swan is the movant and the Counterclaim is the non-movant's pleading. Consequently, the Counterclaim's allegations are the ones taken as true. *See Samsung C&T Am., Inc. v. Tommy Bahama Grp., Inc.*, 2022 WL 624555, at *3 (S.D.N.Y. Mar. 3, 2022) (applying that standard where the plaintiff moved for judgment on the pleadings against the defendant's counterclaims). It follows that the movant's own contested allegations are not credited: a party moving for judgment on the pleadings "impliedly admits the truth of its adversary's allegations and the falsity of its own allegations that have been denied by that adversary." *City of Almaty v. Ablyazov*, 2019 WL 1430155, at *3 (S.D.N.Y. Mar. 29, 2019) (citations omitted). The court accordingly applies "the ordinary Rule 12(c) standard, taking as true all well-pleaded allegations in the [non-movant's

pleading] . . . without regard to whether they were controverted by the moving party's answer." *Id.* at *4.

**Second, the Court may not weigh competing allegations or resolve disputed facts**. Judgment on the pleadings "is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial." *Lively*, 6 F.4th at 301 (citations omitted). A court "may consider undisputed allegations of fact on a Rule 12(c) motion under the same standard as Rule 12(b)(6), but it may not use a motion for judgment on the pleadings to weigh disputed factual allegations." *Id.* at 302; *accord Utica Nat'l Assurance Co. v. Amazon.com Servs., Inc.*, 2025 WL 754125, at *4 (S.D.N.Y. Mar. 10, 2025).

**Third, the Court may not look beyond Page's pleading**. On a Rule 12(c) motion the court must "remain within the non-movant's pleading" and may consider extrinsic material only if it is incorporated by reference into, integral to, or judicially noticeable relative to that pleading. *Lively*, 6 F.4th at 305.[1] The Court "may not resolve the motion by weighing the plausibility of competing allegations or by considering evidence extrinsic to the non-movant's pleading without converting the motion to one for summary judgment." *Id.* at 306. A document is not integral to a pleading merely because the pleading refers to it; the pleader must have relied on its terms and effect. *Samsung*, 2022 WL 624555, at *7. And even where a court may take judicial notice that other filings exist, it errs "to the extent that it accept[s] [their] allegations to be true." *Lively*, 6 F.4th at 305.

[1] In *Lively*, the plaintiff was the non-movant, and the pleading under review was the complaint together with the documents attached to it. 6 F.4th at 300–01. Here the posture is reversed. Page is the non-movant, and the operative pleading is the Counterclaim, which has no attachments. The materials Swan relies on are exhibits to her own complaint and to her motion papers, which do not form part of the pleading her motion is directed at.

# ARGUMENT

## I. THE COUNTERCLAIM PLEADS A COMPLETE CLAIM OF TITLE

Accepting Page's allegations as true and drawing all inferences in his favor, the Counterclaim states a plausible claim that Page holds title. It pleads each link the law requires: the Drawing belonged to Basquiat and not to any alleged partnership (FACC ¶¶ 11–13); it was abandoned by his family and estate after Basquiat's death (FACC ¶¶ 23–24); Goode took lawful possession of the Drawing (FACC ¶ 26) and delivered it to Page (FACC ¶ 27); and Page received it intending to keep it as his own and has kept it ever since (FACC ¶ 28). Swan's contention that the "chain of title fails at every link" (Pl. Br. at 5) misapprehends both the pleading and the governing law, and her alternative theory depends entirely on facts Page has denied.

### A. Page Has Alleged That the Drawing Belonged to Basquiat

The threshold link in Page's chain of title is that the Drawing was Basquiat's own property and never an asset of any partnership. This is precisely what the Counterclaim alleges, and Swan's assertion that Page's "only factual basis" is that the Drawing "was found in the artist's apartment many years later" (Pl. Br. at 5) mischaracterizes the pleading. Page alleges that Basquiat created the Drawing and that it remained his personal property until his death, that it was never a business asset of, or possessed by, Fertility, Isaia NYC, Rankin, or Swan, and that it was later found among the effects abandoned in his apartment (FACC ¶¶ 10–13, 16, 26–27). Those allegations support the reasonable inference that the Drawing belonged to Basquiat — an inference the Court must draw in Page's favor. *Lively*, 6 F.4th at 301.

Swan's related suggestion that Page "pleads no basis for personal knowledge of [the Drawing's] ownership or custody at any relevant time" (Pl. Br. at 5) ignores the allegation that supplies exactly that basis. Page served as Director of Sales and Marketing at Isaia NYC and as its primary liaison to major press outlets, with "direct visibility into the company's promotional

materials and business records" (FACC ¶¶ 15–16). In that capacity he never saw the Drawing, or any reference to it, "in any business file, inventory, or promotional material of Fertility or Isaia NYC" (FACC ¶ 16). That is a pleaded fact resting on a pleaded foundation — and it answers, on its own terms, Swan's contention that the Drawing was "acquired on account of a partnership" (Pl. Br. at 5).

### B. Abandonment Is Well-Pleaded and Presents a Question of Fact

New York courts define abandonment as "the relinquishing of all title, possession, or claim to or of it — a virtual intentional throwing away of it." *Foulke v. N.Y. Consol. R.R. Co.*, 228 N.Y. 269, 273 (1920). This "requires a confluence of intention and action by the owner": "the law demands proof both of an owner's intent to abandon the property and of some affirmative act or omission demonstrating that intention." *Hoelzer v. City of Stamford*, 933 F.2d 1131, 1138 (2d Cir. 1991). The Counterclaim pleads both. Basquiat's family removed all valuable objects from the apartment and left the remaining contents — including the Drawing — behind (FACC ¶ 23), and neither the family nor the estate ever inquired about, claimed, or sought the return of the Drawing for more than three decades (FACC ¶ 24). Taken as true and read in Page's favor, those allegations support the inference of an intent to relinquish coupled with the overt act of walking away from the property while carrying off everything of value. And once property is abandoned, it "is owned by him who takes it into his ownership." *Foulke*, 228 N.Y. at 273.

On this point, Swan's own authority defeats her. She invokes the rule that abandonment "is not presumed" and that "[p]roof supporting it must be direct or affirmative or reasonably beget the exclusive inference of the throwing away." *Id.* (quoted at Pl. Br. at 6). But that is an evidentiary standard of proof — a trial burden, not a pleading requirement. Page need not prove abandonment now; he need only allege it plausibly, which he has. Whether the pleaded facts ultimately "beget the exclusive inference of the throwing away" is for the factfinder, because "proof of abandonment

turns on the issue of intent" and so requires "all relevant facts." *Hoelzer*, 933 F.2d at 1138. New York courts accordingly resolve abandonment on a developed record: in *Cretaro*, the movant's own submissions at summary judgment "raise[d] triable issues of fact whether plaintiff abandoned the property," *Cretaro v. Huntington*, 203 A.D.3d 1696, 1698 (4th Dep't 2022), and *Foulke* itself was decided on a full trial record, 228 N.Y. at 273. Neither case dismissed an abandonment theory at the pleading stage.

*Hoelzer* does not support the comparison Swan draws from it. She describes the case as rejecting a restorer's claim that the city "knowingly discarded" the murals "as trash" and "never sought their return" (Pl. Br. at 6), and reasons that if those facts did not establish abandonment, Page's allegations "fall far short" (Pl. Br. at 6). The opinion is to the contrary. The murals were removed by construction workers "apparently unknown to vacationing school officials and without authorization," and the Superintendent had directed before the renovation that they be removed and "roll[ed] for proper storage" — which the Second Circuit treated as "clear evidence of the City's intention to retain the murals," adding that the workers' disregard of those instructions "did not reflect a shift in municipal policy." *Hoelzer*, 933 F.2d at 1134, 1138. The city also did demand the murals' return, in 1986. *Id.* at 1135, 1137. Abandonment failed in *Hoelzer* because the record affirmatively established an intent to retain. Here, the Counterclaim pleads the opposite: Basquiat's family took the valuable property from the apartment and left the rest behind (FACC ¶ 23), and neither the family nor the estate inquired about, claimed, or sought the Drawing in more than three decades (FACC ¶ 24). Swan's comparison therefore runs the wrong way — and, in any event, it is a comparison to a trial record, not to a pleading.[2]

[2] Swan's other example of a "possessors better situated" than Page who lost (Pl. Br. at 8), *Howard University v. Borders*, 588 F. Supp. 3d 457 (S.D.N.Y. 2022) is even further afield because it did not concern abandonment at all: it concerned an uncontested gift to the current possessor. Neither *Hoelzer* nor *Howard* speaks to the question before the Court, which is not whether Page *will prove* abandonment but whether he *has pleaded* it.

Swan's insistence that abandonment cannot rest on an allegation pleaded "on information and belief" (Pl. Br. at 6) fares no better. The Second Circuit permits such pleading where the facts "are peculiarly within the possession and control" of another party, or alternatively, where "the belief is based on factual information that makes the inference" alleged plausible. *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Both independent conditions are satisfied here. What Basquiat's family and estate intended when they emptied the apartment is knowledge Page could not have, and the Counterclaim says so rather than claiming otherwise. Nor does the belief float free of fact: it rests on the conduct pleaded immediately before it — that the family carried off all valuable property, left the rest, and never afterward claimed the Drawing (FACC ¶¶ 23–24).

Swan's remaining point — that the appointment of an administrator forecloses abandonment, because a decedent's personal property "vests in the fiduciary, who is charged with collecting and administering it" (Pl. Br. at 6) — is unworkable. If the appointment of a fiduciary were itself dispositive, no property of any decedent could ever be abandoned, however plainly the estate walked away from it. Here the Counterclaim alleges that this estate did, and whether that manifests an intent to relinquish is the question of fact *Hoelzer* describes (FACC ¶¶ 23–24).

### C. Goode Took Possession of the Drawing and Delivered It to Page

Swan's argument misreads the Counterclaim. She argues that the Warhol estate had no interest in Basquiat's chattels and could convey none (Pl. Br. at 7). Page agrees. The Counterclaim nowhere alleges that the Warhol estate conveyed the Drawing to Goode, and Page's title does not depend on any such conveyance. What the pleading alleges is that the contents of the apartment were abandoned (FACC ¶¶ 23–24) and that Goode, in clearing it, "thereby took lawful possession of its abandoned, unclaimed contents" (FACC ¶ 26). Abandoned property "is owned by him who takes it into his ownership," *Foulke*, 228 N.Y. at 273, and not by whoever last had an interest in the premises where it sat. Goode's possession arose from the abandonment, not from Hughes's

request.

Swan's alternative theory is that Goode took the contents as the estate's agent and so "[took] for that person, not for herself" (Pl. Br. at 7). That theory fails on its own terms. An agent takes for a principal who has an interest in what is taken, and Swan concedes the landlord had none. *Foulke*'s "mere custodian . . . for the owner" language presupposes an owner whose interest survives, 228 N.Y. at 275, and the Counterclaim pleads that no such owner existed (FACC ¶¶ 23–24). Nor does the pleading fail to allege Goode's intent, as Swan contends: it alleges she took lawful possession of the abandoned contents (FACC ¶ 26), then decided the Drawing's disposition and selected its recipient (FACC ¶ 27). These are acts of dominion, not custody. Whether Goode took the contents as her own or held them for another is at most a question of intent, which cannot be resolved on the pleadings alone.

In any event, Page's chain of title does not require that Goode ever held title. If she was a mere conduit who never took the contents into her own ownership, the Drawing remained ownerless in her hands until Page received it intending "to keep it as his own property" (FACC ¶ 28). Swan's agency argument, at best, merely pinpoints the moment at which title vested in Page; it does not defeat it.

### D. Page Pleads an Affirmative Source of Title Relative to Swan

Page's possessory title is superior to that of anyone who cannot prove a better right. In New York, a lawful possessor's right is "superior and paramount" to that of a later taker, and "[a]s to everybody except the true owner," the possessor holds the owner's right "to have and defend its custody and direct possession." *Foulke*, 228 N.Y. at 275. Abandoned property, in turn, "is owned by him who takes it into his ownership." *Id.* at 273. Page pleads that he received the Drawing, acquired title upon receipt (FACC ¶ 28), and has held it openly and as his own since 1989 (FACC ¶ 31), allegations that, taken as true, establish a possessory title good against all but a party with a

superior right. That is all Page must plead as against Swan, because title to a chattel is relative. Swan's repeated demand that Page establish an unbroken, four-link chain of absolute title (Pl. Br. at 1, 5) imposes a burden the law does not, and certainly not at the pleading stage.

One point should be made plainly, because Swan twice suggests otherwise. Page does not contend that the passage of thirty years conferred title on him. Swan is correct that, absent a statute conferring title by lapse of time, relative possessory rights "cannot depend upon the mere lapse of time, no matter how long" (Pl. Br. at 12, 23). Page's title arose in 1989, when he took the abandoned Drawing into his ownership (FACC ¶ 28). The thirty years are pleaded for a different purpose: they evidence the open, continuous, and unconcealed character of his possession (FACC ¶ 31), and the absence throughout that period of any competing claim by anyone — not by Basquiat's family or estate (FACC ¶ 24), not by Rankin's estate or family (FACC ¶ 30), and not by Swan (FACC ¶ 32). Lapse of time is not the source of Page's title; it is evidence that he has asserted ownership from the beginning.

## II. SWAN'S PARTNERSHIP THEORY RESTS ON FACTS PAGE HAS DENIED

First, Swan's partnership argument rests on facts Page has denied. Her theory presupposes that a partnership called Fertility existed, that Swan was a member of it, and that the Drawing was "acquired on account of [that] partnership" (Pl. Br. at 5). The Counterclaim alleges the contrary (FACC ¶¶ 9, 11–13), and Page has specifically denied that the inscription establishes that Swan was an owner of Fertility or had any ownership interest in the Drawing (Answer, Resp. to ¶ 63). Swan also states that the Counterclaim "nowhere alleges that the proprietors relinquished the Drawing" (Pl. Br. at 2, 9). That is accurate, and it is not an oversight: a pleading need not allege the relinquishment of an interest it alleges never existed. Swan says the omission "is not curable" because she alleges the opposite — that she believed she still had the Drawing and searched for it (Pl. Br. at 9, citing FAC ¶¶ 25–29). But those are her allegations, on her own motion, and the

Counterclaim alleges otherwise.

Second, to the extent Swan argues that the Drawing's depiction of Rankin's business makes it the property of that business, the argument does not follow. Under N.Y. Partnership Law § 12, property is partnership property only if it was "brought into the partnership stock" or "acquired, by purchase or otherwise, on account of the partnership." Whether property is partnership property "depends on the intention of the parties as revealed by their conduct," and "the mere fact that property is used in the firm business will not of itself show that it is firm property." *Sriraman v. Patel*, 761 F. Supp. 2d 7, 18 (E.D.N.Y. 2011). And the Counterclaim forecloses the alternative route: the Drawing was never displayed, reproduced, or used in any promotional material of any of Rankin's ventures (FACC ¶ 12), and never appeared in any business file or inventory of Fertility or Isaia NYC during the years Page had direct visibility into those records (FACC ¶ 16). A chattel that a business never received, never used, and never recorded was not "acquired on account of" that business.

Third, to the extent Swan's theory depends on Basquiat's having intended the Drawing to belong to the partnership she alleges, that is a question of fact: whether property "was to be considered separate property or partnership property" turns on "[t]he intent of the parties," and is "inappropriate for resolution by summary judgment." *Okun v. Braunstein*, 172 A.D.2d 259, 260 (1st Dep't 1991). So is the antecedent question whether any partnership existed, which turns on "the parties' relationship as a whole" — and "calling an organization a partnership does not make it one." *Kyle v. Brenton*, 184 A.D.2d 1036 (4th Dep't 1992) (reversing summary judgment that a partnership existed) (citations omitted). Swan's rejoinder that "[a] general partnership requires no formalities" (Pl. Br. at 9) misses the point. The question is not whether an informal partnership could exist in the abstract, but whether this partnership existed, whether Swan belonged to it, and

whether this Drawing was ever its property.

Finally, Swan's reliance on N.Y. Partnership Law § 51(2)(d), under which a deceased partner's right in specific partnership property vests in the surviving partner (Pl. Br. at 10), fails at the same threshold. The statute operates only on "specific partnership property." So do §§ 20(2) and 51(2)(b), which describe what a partner may do with partnership property, and §§ 62 and 68, which govern the winding up of a partnership's affairs. None reaches a chattel that was never partnership property at all, which is the contested question, and not one resolvable on the pleadings.

## III. SWAN ATTACKS THEORIES THE COUNTERCLAIM DOES NOT PLEAD

Much of Swan's motion is aimed at arguments Page does not advance in his Counterclaim. She devotes Point III to the good-faith-purchaser rule and U.C.C. § 2-403(1) (Pl. Br. at 10–12), Point IV to rights "derived from the artist or his estate" (Pl. Br. at 12), and Point V to the elements of an *inter vivos* gift from Rankin (Pl. Br. at 13–14). Yet none of the three is the theory the Counterclaim pleads, namely the abandonment of the Drawing and Page's acquisition of possession and title (FACC ¶¶ 24, 26–28). An argument aimed at a theory Page does not plead supplies no basis to dismiss the theory he does.

First, Swan's good-faith-purchaser argument begins by recasting the source of the caretaking account. She asserts that FACC ¶ 41 "misstates" this Court's March 2026 Opinion and that she "has never alleged" that Page received the Drawing in exchange for caretaking, characterizing the account instead as Page's own representation, "offered against him" under Fed. R. Evid. 801(d)(2)(A) (Pl. Br. at 10). That recasting is what allows her to treat FACC ¶ 29's denial as a party contradicting his own admission rather than as a well-pleaded allegation, and it is the predicate for her Point VI.B as well. But the Opinion says otherwise: "*Swan plausibly alleges* that Page is a good faith purchaser of the Drawing because he received the Drawing in exchange for 'taking care of Mr. Rankin during his illness.'" *Swan*, 2026 WL 836655, at *4 (emphasis added).

The caretaking account is Swan's allegation — the premise on which she defeated Page's motion to dismiss — and FACC ¶ 29 denies it. On her own motion, that denial is taken as true.

Nor does *State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249 (2002) advance her position. She contends that FACC ¶ 29 "does not accomplish what it evidently intends" because consideration is "either a benefit to the promisor or a detriment to the promisee," so that "no bargain or payment is required" (Pl. Br. at 11). But FACC ¶ 29 is not limited to payment: it denies that the Drawing was transferred "pursuant to any caregiving arrangement or any agreement under which Page provided services to Rankin in exchange for the Drawing or any other thing of value," and denies any "expectation of compensation or exchange" (FACC ¶ 29). That language denies a benefit conferred and a detriment incurred, not merely a price paid. In any event, whether consideration passed is the precise question this Court held that discovery must illuminate. *Swan*, 2026 WL 836655, at *4–*5.

Moreover, these arguments are beside the point because Page relies on neither U.C.C. § 2-403(1) nor good-faith-purchaser status. Section 2-403(1) operates only to cure a defect in a transferor's voidable title — it "presupposes a transferor holding voidable title" (Pl. Br. at 12) — and the Counterclaim pleads no such chain; indeed, it expressly disclaims good-faith-purchaser status (FACC ¶ 42). Swan is therefore right that Page is not a purchaser for value and that innocence "does not create title" (*id.*), and neither observation reaches him. Page's title rests on his possession and ownership of abandoned property.

Second, Page asserts no rights belonging to Basquiat's estate. Swan invokes the rule that "a stranger to a decedent's estate . . . lacks capacity to assert claims to property on the decedent's behalf" (Pl. Br. at 12). But her lone authority does not reach this case. In *Schoeps v. Andrew Lloyd Webber Art Foundation*, the plaintiff sued to recover a painting as an heir to the decedent's estate,

and the First Department held that even a sole beneficiary "cannot act on behalf of the estate" without first being appointed a representative under New York's Estates, Powers and Trusts Law. 66 A.D.3d 137, 140–41 (1st Dep't 2009). That rule governs a party asserting the estate's own claim; it says nothing about a party who claims property in his own right. Page does not sue on the estate's behalf or claim as an heir. He claims as the possessor of property the estate abandoned (FACC ¶¶ 24, 42) — a title adverse to the estate, not derived from it, which arose only after and because the estate relinquished its interest.

Third, Page pleads no *inter vivos* gift from Rankin. Swan argues at length that the Counterclaim fails to plead donative intent, delivery, and acceptance (Pl. Br. at 13–14). As she acknowledges, the Counterclaim's "chain of title runs through Goode, not Rankin," and she addresses the theory only "without conceding that the amended pleading states it" (Pl. Br. at 13). Again, a theory the Counterclaim does not plead cannot be a ground for dismissing the one it does.

## IV. THE COUNTERCLAIM IS INTERNALLY COHERENT

Swan contends that the Counterclaim contradicts itself in two respects: (a) that Page cannot plead lawful acquisition of title while denying that he is a good faith purchaser, and (b) that FACC ¶ 28's reference to Rankin's wishes cannot be reconciled with the allegation that title came from Goode. Neither identifies an inconsistency.

### A. Page's Chain of Title Does Not Depend on Being a Purchaser

Swan's framing is that "[l]awful acquisition is the foundation of [Page's] title claim, but tortious possession must be the predicate of his limitations defense," so that "[w]hichever he keeps, the other fails" (Pl. Br. at 16). This premise is wrong. Tortious possession is not the predicate of anything Page pleads.

FACC ¶ 42's statement that Page "is not a good faith purchaser" speaks to the timeliness of Swan's conversion claim, which turns on whether Page gave consideration for the Drawing —

a question that awaits discovery. *Swan*, 2026 WL 836655, at *4–*5. Whether Page is or is not a good faith purchaser bears on when Swan's claim accrued. It has nothing to do with whether Page holds title in his own right. The chain of title is pleaded in full and independently of FACC ¶ 42, and it does not run through any purchase or exchange of consideration. See Point I above. A person may hold title to abandoned property without ever having been a purchaser of anything, which is exactly what Page alleges.

Swan's premise is that the demand-and-refusal rule applies to anyone who is not a thief. This is evident when she states that Page's allegations of lawful acquisition — that Goode took lawful possession, that Page "acquired title" on receipt, and that he has "always maintained a claim of right" — "place [him] squarely within the rule he seeks to escape" (Pl. Br. at 15). Her authority for that premise is a single phrase in the Appellate Division's decision in *Solomon R. Guggenheim Found. v. Lubell* — that the requirement applies to a good-faith purchaser "or indeed anyone else whose possession is not tortious." 153 A.D.2d 143, 147 (1st Dep't 1990). But this is not how courts in New York have applied the rule. The phrase Swan cites was dicta — the possessor in *Lubell* was a purchaser, so nothing turned on who else the rule might reach — and the Court of Appeals, in affirming, stated the rule in purchaser terms only. *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 318 (1991) ("Until demand is made and refused, possession of the stolen property by the good-faith *purchaser* for value is not considered wrongful") (emphasis added).

Later decisions have done the same. *See Seventh Regiment Fund, Inc.*, 98 N.Y.2d at 261 (2002) (contrasting "a bona fide *purchaser* — against whom the conversion cause of action accrues upon demand and refusal — [with] a thief, against whom demand would be futile"); *Bakalar v. Vavra*, 619 F.3d 136, 141 (2d Cir. 2010) (stating the rule as governing "the good-faith *purchaser* of stolen property," whose possession "is not considered wrongful" until demand and refusal);

*Zuckerman v. Metropolitan Museum of Art*, 928 F.3d 186, 194 n.7 (2d Cir. 2019) (the limitations period is not triggered "until a bona fide *purchaser* refuses an owner's demand for return of a stolen art object") (emphases added).

Swan reaches beyond these authorities to two cases in which a possessor acquired by gift. But neither case addressed the scope of the rule. In *Grosz v. Museum of Modern Art*, the court applied the rule to three paintings — two purchased, one received as a gift — on an assumption drawn from the plaintiffs' own papers that none had been acquired with knowledge they were stolen, without distinguishing the gift from the purchases. 772 F. Supp. 2d 473, 483 (S.D.N.Y. 2010). And in *Howard University v. Borders*, the possessors rested their timeliness opposition on the statutes of limitations of other jurisdictions; after finding that New York law applied, the court applied New York's demand-and-refusal rule without considering whether a gratuitous acquisition placed them outside it, and it did so on summary judgment, with the gift to the possessors undisputed. 588 F. Supp. 3d 457, 462, 474 (S.D.N.Y. 2022). Here, however, the character of the transfer is *the* disputed question, and it is disputed on the pleadings.

Whether the demand-and-refusal rule applies depends on how the possessor is characterized, and that characterization cannot be made on these pleadings. This Court has already said as much: whether the rule applies "turns on whether Swan plausibly alleges that . . . Page is a good faith purchaser of the Drawing by reason of the care he provided Rankin," and "[d]iscovery on these issues may further illuminate the applicability of the demand-and-refusal rule." *Swan*, 2026 WL 836655, at *4. Swan is entitled to argue, after discovery, that Page gave consideration and that the rule therefore governs. What she cannot do is assume the answer on a motion that requires the Court to take Page's allegations as true.

**B. Swan Confuses Why Page Kept the Drawing With How He Acquired It**

Swan's second asserted inconsistency sets FACC ¶ 28 against ¶¶ 42 and 45. Her syllogism

is that "[a] person who has acquired title needs no one's permission to keep what is his," from which she infers that "Rankin, not Defendant, was the person for whom it was understood to be destined" (Pl. Br. at 16).

But the inference does not follow. FACC ¶ 28 does not plead that Page needed permission to keep the Drawing; it pleads why it mattered to him — it was "an informal sketch" he "did not understand . . . to have significant monetary value," whose "connection to Rankin held deep personal and sentimental significance" (FACC ¶ 28), kept "as a memento" and "the only tangible object Page had to remember Rankin by" (FACC ¶ 30). This sentiment explains *why* Page kept the Drawing. It says nothing, in legal terms, about *how* he got it.

Swan's remaining textual points are of the same character. That Goode wished the Drawing to go to "someone who would find it meaningful," and that Lumet suggested Page because he "had worked closely with Rankin" (FACC ¶ 27), explain why Goode chose Page as the recipient; they do not suggest she was holding the Drawing for Rankin. Indeed, the Counterclaim does not plead a transfer routed through Rankin (FACC ¶ 30). At most, then, Swan offers a competing inference from allegations that support Page's reading at least as naturally — and on a motion directed at Page's pleading, competing inferences are drawn in Page's favor. *Lively*, 6 F.4th at 301. Swan says she "does not ask the Court to resolve on the pleadings what the participants intended" (Pl. Br. at 16), but her argument requires exactly that.

## V. SWAN'S ARGUMENT MUST REMAIN WITHIN THE COUNTERCLAIM

Swan argues that the Counterclaim is "irreconcilable with itself and with Defendant's prior accounts" (Pl. Br. at 15), and that the Court should therefore disbelieve its allegations and enter judgment for her. In doing so, she asks the Court to weigh competing factual accounts, to credit materials outside Page's pleading, and to treat Page's earlier, unrepresented statements as conclusive admissions, none of which is permissible on a Rule 12(c) motion. Swan concedes she

does not "ask the Court to resolve credibility on a motion under Rule 12(c)" (Pl. Br. at 18), yet, again, that is precisely what her argument requires.

**A. Page's Extrinsic Statements Are Not Before the Court**

Much of Swan's argument depends on materials outside Page's pleading — a published interview and *pro se* filings in which Page described the Drawing as a gift from Rankin (Pl. Br. at 18). A Rule 12(c) motion cannot be decided that way. The Court may "not resolve the motion by weighing the plausibility of competing allegations or by considering evidence extrinsic to the non-movant's pleading without converting the motion to one for summary judgment." *Lively*, 6 F.4th at 306.

Swan correctly defines the scope of a Rule 12(c) motion — "the pleadings, documents attached to or incorporated in them, and matters subject to judicial notice" (Pl. Br. at 4) — and then incorrectly exceeds it. On a motion directed at the Counterclaim, the referent is not "the pleadings" at large. *Lively* is explicit that the court must "remain within the *non-movant's* pleading," 6 F.4th at 305 (emphasis added), and that a court errs by supplementing its assessment of the non-movant's pleading with facts drawn from the movant's. *Id.* at 304–05. Page's interview and his *pro se* filings are neither attached to, incorporated in, nor integral *to the Counterclaim*, and Swan does not contend they are. A document does not become integral to a pleading merely because the pleading refers to it; the pleader must have relied on its terms and effect. *Samsung*, 2022 WL 624555, at *7.

She reaches for these documents instead by describing "the exhibits to the accompanying Declaration" as "filings in this action" (Pl. Br. at 4) — that is, as matters subject to judicial notice. But judicial notice of a filing establishes only that the filing exists. A court errs "to the extent that it accept[s] [the] allegations" in a noticed document "to be true." *Lively*, 6 F.4th at 305. Swan offers these materials for their truth and for nothing else: her argument is that what Page said earlier

is what actually happened, and that the Counterclaim is therefore implausible. The rules of judicial notice do not permit this. Having declined to convert under Rule 12(d) (Pl. Br. at 4), Swan cannot have the benefit of evidence without the procedure that would let Page meet it.

Swan's two authorities do not supply what the rule withholds. *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145 (2d Cir. 2014) states the principle in terms of general allegations contradicted by more specific allegations in the same pleading and applies it that way, testing a general assertion in the plaintiff's complaint against the specific allegations in that same complaint. *Id.* at 151–152. There is no such conflict here: Page's statements that he "acquired title" to the Drawing (FACC ¶ 42) follow from his specific allegations of how he came to hold it (FACC ¶¶ 24, 26–28). And *Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523 (S.D.N.Y. 2008), applies only to "documents on which the complaint relies," namely documents the non-movant relied on, not materials the movant brings forward. *Id.* at 527. Page's prior letters and interview are not such documents *relative to the Counterclaim*.

**B. Page's Earlier Pro Se Statements Do Not Bind Him**

Swan asks the Court to hold Page to prior statements and filings he made *pro se* and to treat them as binding admissions foreclosing the positions he now advances with the benefit of legal representation. But a party is not locked into whatever he first said, especially without counsel. Indeed, "[p]rior inconsistent pleadings . . . are controvertible, not conclusive, admissions," and the "usual and benevolent option is to accept the superseded pleadings but allow the factfinder to consider the earlier pleadings as admissions in due course." *Holland v. City of New York*, 197 F. Supp. 3d 529, 539 n.9 (S.D.N.Y. 2016) (internal quotation marks and citations omitted). This is especially so where the earlier statements were made without counsel: Page's informal account of how he came to have the Drawing, given while he was unrepresented, was not a considered legal theory of ownership, and a court will not penalize a formerly *pro se* litigant for having "failed to

expressly articulate that alternative legal theory earlier in the proceedings." *Cf. Levi v. RSM McGladrey, Inc.*, 2014 WL 4809942, at *7 n.15 (S.D.N.Y. Sept. 24, 2014).

That is precisely what happened here. Page's earlier statements were his account of why he came to have the Drawing and why he kept it, not a pleading of how title passed. The Counterclaim is the first pleading Page has filed with the advice of counsel, and it pleads the legal basis of a claim his earlier statements did not. That is a consequence of Page having obtained legal representation. Swan remains free to offer the earlier statements to the trier of fact for whatever weight they carry; what she cannot do, however, is use them to win judgment as a matter of law on a motion where, as she concedes, credibility is not before the Court (Pl. Br. at 18).

## VI. THE FIFTH AFFIRMATIVE DEFENSE IS NOT BEFORE THE COURT

Swan turns to Page's Fifth Affirmative Defense while conceding that she "does not seek judgment on that defense by this motion" (Pl. Br. at 19). She asks only that the Court declare that Page's own allegations foreclose its premise, so that the defense "supplies no alternative ground on which the Court might decline to reach the counterclaim" (*id.*). The Court should decline, for two independent reasons.

First, Swan expressly seeks no judgment on the Fifth Defense. A ruling on a defense the movant has declined to put in issue would decide nothing that governs this motion — the very definition of an advisory opinion. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (courts do not issue "an opinion advising what the law would be upon a hypothetical state of facts").

Second, the question could not be resolved now in any event, and certainly not in Swan's favor. Whether a demand was made, when, upon whom, and whether any refusal followed are questions of fact, and on a motion directed at Page's pleading every inference runs in Page's favor. *Lively*, 6 F.4th at 301. Swan asks the Court to draw them against him, and to do so on the strength

of allegations that are hers rather than Page's: the assertion that the auction purchaser still held the Drawing through December 2019 appears in her First Amended Complaint ("FAC") (¶¶ 68, 74), not in the Counterclaim. On a motion directed at the Counterclaim, the Counterclaim's allegations are the ones the Court takes as true. Page's Fifth Defense pleads that "Swan made a demand upon Page through Sotheby's in or about October and November 2019, and Page refused that demand" (Answer, Fifth Defense). This Court has already held that it could not determine "without further discovery" whether a demand and refusal occurred more than three years before suit. *Swan*, 2026 WL 836655, at *4 n.4. Page does not ask the Court to resolve that question now. He asks only that it not be resolved against him on the pleadings.

## VII. PAGE CAN PREVAIL BY ESTABLISHING A SUPERIOR INTEREST

Swan's final merits argument is that Page's alternative prayer is either "redundant or impermissible." (Pl. Br. at 22). Not so. Page's primary request is a declaration that title is vested in him (FACC ¶ 49, Prayer ¶ (a)), on the affirmative source of title set out in Point I above. The alternative request asks the Court to declare that Swan has no right, title, or interest in the Drawing — a declaration that would necessarily establish Page's right as superior to Swan's, which would resolve the parties' dispute. Swan cites *Nissan Motor Acceptance Corp. v. Scialpi*, 94 A.D.3d 1067, 1068 (2d Dep't 2012) for the proposition that a claim to a chattel "turns on relative title: which party holds the superior right" (Pl. Br. at 22). Page agrees: relative title requires a claimant to plead a right superior to his adversary's, not to anticipate and negate every interest anyone might assert, least of all an interest the Counterclaim alleges never existed (FACC ¶¶ 11, 13, 16).

Swan then claims that Page's alternative request to declare her own "title is defective" asks the Court to "run [New York's burden] allocation in reverse" (Pl. Br. at 22–23). This compounds her error in applying *Lubell*, which does not provide for a free-standing burden applied to all conceivable possessors. Rather, the burden is the corollary of the demand-and-refusal framework,

under which a good-faith purchaser's possession is lawful until demand and refusal, and it therefore follows the categorization of the possessor *as a good-faith purchaser. Lubell*, 77 N.Y.2d at 321. This is an *antecedent* and necessary step in the analysis, and the rule Swan invokes assumes what she has not established: that the Drawing was stolen and that she is its owner. Both are the questions this case will decide, but on a full record.

## VIII. DECLINING DECLARATORY JURISDICTION WOULD BE PREMATURE

Swan asks the Court, in the alternative, to decline to entertain the Counterclaim under the Declaratory Judgment Act (Pl. Br. at 23–24). This Court has already applied the governing framework to this very controversy. Six months ago, weighing the factors identified in *Admiral Insurance*, it held that because the interpleader action had been dismissed "without resolving the disputed ownership of the Drawing," a declaratory judgment "would be useful and could finalize the controversy in this case," and that it was "not presented with any reason to believe the remaining factors counsel against entertaining the claim." *Swan*, 2026 WL 836655, at *5 (citing *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023)). That reasoning applies with equal force to Page's Counterclaim — which the Court expressly invited him to file. *Id.* at *6.

Swan's argument is directed almost entirely at Page's alternative prayer, which she says "would settle nothing" because it "identifies no owner" (Pl. Br. at 23). That does not reach the relief Page principally seeks: a declaration that all right, title, and interest in the Drawing is vested in him (FACC ¶ 49, Prayer ¶ (a)). A judgment to that effect identifies the owner, ends the dispute, and supplies precisely what the Stipulation contemplates — an instruction identifying to which party the Drawing should be released (FACC ¶ 36). Nor is the Counterclaim redundant of Page's defenses: it "asserts an independent case or controversy that survives dismissal of the plaintiff's claim," *Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 467 (S.D.N.Y. 2010), because it

supplies an independent basis for resolving the dispute without reference to Swan's conversion claim.

Swan's remaining suggestion — that the Court should decline the Counterclaim because "the factual basis of this counterclaim changed in response to the Court's rulings rather than to newly discovered facts" (Pl. Br. at 24) — is the same argument she makes about Page's extrinsic statements, and it does not provide any basis for dismissing Page's Counterclaim on the pleadings.

**CONCLUSION**

For the foregoing reasons, Page respectfully requests that the Court deny Plaintiff's motion for judgment on the pleadings in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: New York, NY
October 5, 2026

Respectfully submitted,

STUDIO LEGAL LLP

By: */s/Thomas Touchie*
Thomas Touchie

447 Broadway 2nd FL #388
New York, NY 10013
thomas@studiolegal.xyz
*Attorney for Defendant Robert Everett Page IV*

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.1(c), the undersigned counsel certifies that according to the word-processing system used to prepare this motion, the total word count for all printed text is 8402 words, inclusive of footnotes, and excluding the caption, table of contents, table of authorities, signature blocks, or any required certificates.

Dated: New York, NY
October 5, 2026

Respectfully submitted,

STUDIO LEGAL LLP

By: */s/Thomas Touchie*
Thomas Touchie

447 Broadway 2nd FL #388
New York, NY 10013
thomas@studiolegal.xyz
*Attorney for Defendant Robert Everett Page IV*