## TABLE OF CONTENTS


**PRELIMINARY STATEMENT** .......... 1

**ARGUMENT** .......... 2

I. ABANDONMENT IS THE ONLY SOURCE OF TITLE LEFT, AND THE COUNTERCLAIM DOES NOT PLEAD IT .......... 2

II. THE OPPOSITION SUPPLIES A NEW ACCOUNT OF GOODE'S TAKING, AND THE NEW ACCOUNT MAKES HER A FINDER .......... 5

III. PAGE CANNOT BE A LAWFUL OWNER FOR PURPOSES OF TITLE AND A TORTIOUS POSSESSOR FOR PURPOSES OF LIMITATIONS .......... 6

IV. THE TOLLING ARGUMENT IS UNANSWERED .......... 8

V. THE STIPULATION FORECLOSES THE OUTCOME PAGE'S LIMITATIONS DEFENSE IS DESIGNED TO PRODUCE .......... 9

VI. THE REMAINING POINTS .......... 10

**CONCLUSION** .......... 10

# TABLE OF AUTHORITIES

## Cases

*Arista Recs., LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)....4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....3, 4

*Foulke v. N.Y. Consol. R.R. Co.*, 228 N.Y. 269 (1920)....4, 5

*Gillet v. Roberts*, 57 N.Y. 28 (1874)....7

*Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 473 (S.D.N.Y. 2010)....7

*Hoelzer v. City of Stamford*, 933 F.2d 1131 (2d Cir. 1991)....3, 4, 7

*Howard University v. Borders*, 588 F. Supp. 3d 457 (S.D.N.Y. 2022)....7

*In re Estate of Loew*, 38 Misc. 3d 1206(A) (Sur. Ct. Nassau Cnty. 2012)....7

*In re King*, 305 A.D.2d 683 (2d Dep't 2003)....7

*Mirvish v. Mott*, 18 N.Y.3d 510 (2012)....9

*New York City Transit Auth. v. New-York Hist. Soc'y*, 167 Misc. 2d 31 (Sup. Ct. Kings Cnty. 1995),....7

*aff'd*, 237 A.D.2d 419 (2d Dep't 1997)....7

*Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311 (1991)....4, 7

*Solomon R. Guggenheim Found. v. Lubell*, 153 A.D.2d 143 (1st Dep't 1990), *aff'd*, 77 N.Y.2d 311 (1991)....7

*State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249 (2002)....7

## Statutes and Rules

N.Y. Exec. Order No. 202.8 through No. 202.72....2, 8

N.Y. Pers. Prop. Law § 251....6

N.Y. Pers. Prop. Law § 252....6

N.Y. Pers. Prop. Law § 253....6

N.Y. Pers. Prop. Law § 254....6

N.Y. Pers. Prop. Law § 257....6

N.Y. U.C.C. § 2-403(1)....2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

PHYLLIS SWAN,
Plaintiff,

-against-

ROBERT EVERETT PAGE IV,
Defendant.

------------------------------------------------------------x

Civil Action No. 1:22-cv-10406 (MKV)

**Oral Argument Requested**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## PRELIMINARY STATEMENT

Page's opposition defends the Counterclaim by surrendering most of it. Within two pages he disclaims purchaser-for-value status, any consideration passing in either direction, any right derived from Basquiat's estate, and any *inter vivos* gift from Rankin. He states the newest theory himself: "Page's title rests on his possession and ownership of abandoned property." Opp. 14-15.

Point II of the opposition answers an argument this motion does not make. Swan does not ask the Court to resolve what interest she holds; that belongs to her own claims and to a record yet to be made. A counterclaim seeking a declaration of title must plead a source of title. Opp. 11-13.

One link is therefore left, and the Counterclaim does not plead it. Page's title depends entirely on the allegation that Basquiat's family and estate "abandoned and left unclaimed" what remained in the apartment. FACC ¶ 24. No factual support is pleaded, and nothing alleges that anyone in the family knew the Drawing existed. A person cannot intend to throw away a thing he does not know he has.

Page's second difficulty is that the position he takes on timeliness cannot coexist with the position he takes on title. He argues that the demand-and-refusal rule reaches purchasers only, and that he is not a purchaser. Opp. 16-17. But New York supplies two accrual rules, not three: demand and refusal for the possessor whose possession is not tortious, and accrual at the taking for the

thief. Page asks the Court to place him outside the first without placing him in the second. His own Fifth Defense forecloses the attempt, pleading that Swan made a demand and that Page refused it.

Finally, the opposition is silent on two arguments that dispose of its limitations premise: the 228-day toll worked by Executive Orders 202.8 through 202.72, and the November 14, 2019 letter. Both are conceded for this motion.

## ARGUMENT

### I. ABANDONMENT IS THE ONLY SOURCE OF TITLE LEFT, AND THE COUNTERCLAIM DOES NOT PLEAD IT

The Court identified the moment to cure. Its order granted Page leave to amend and put him on notice that this was his "last opportunity ... to cure any deficiency identified in the pre-motion letters," failure being "deemed a waiver." ECF No. 61 at 1. Swan's letter identified the absence of any pleaded chain of title. The pleading Page filed still supplies none.

Page devotes four pages to materials outside his pleading, Opp. 18-21, but nothing in Point I depends on any of them. Every element of the chain rests on unsupported allegations, FACC ¶¶ 10, 13, 23-24, 26-27, 29, as does the inscription: FACC ¶ 11 pleads that "Basquiat wrote 'Proprietors Isaia Rankin Phyllis Swan' on the Drawing."

Page's title, as this latest iteration describes it, is wholly derivative. He took from Goode, who took from an apartment, in property that was Basquiat's only if Basquiat owned it. Page gave nothing for it and concedes that U.C.C. § 2-403(1) and good-faith-purchaser status do not apply to him. FACC ¶ 29; Opp. 14. A transferee who pays nothing takes what his transferor had and no more.

Two links are unsupported by the pleading, not one. Before abandonment can matter, the Drawing must have been Basquiat's to abandon. The only basis the Counterclaim offers is that Basquiat drew the sketch and that it was found in his apartment years later. FACC ¶¶ 10, 26.

Authorship is not indicia of retained ownership, and location shows where a chattel sat, not who owned it. The Counterclaim itself alleges that the Drawing depicts the premises from which Rankin operated his business under the name Fertility. FACC ¶¶ 9-10. An estate can relinquish only what the decedent owned.

Both steps are inferences, and that is the difficulty. The Court accepts the Counterclaim's facts and draws reasonable inferences from them; it does not accept inferences offered in place of facts. Legal conclusions "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). That Basquiat's family removed the valuable works may be a fact. That the removal was final is assumed rather than pleaded, and leaving a thing behind is not the same as giving it up. Facts "merely consistent with" a pleader's theory "stop[] short of the line between possibility and plausibility." *Id.* at 678.

Abandonment "requires a confluence of intention and action by the owner"; the law "demands proof both of an owner's intent to abandon the property and of some affirmative act or omission demonstrating that intention." *Hoelzer v. City of Stamford*, 933 F.2d 1131, 1138 (2d Cir. 1991). An intention to relinquish presupposes awareness of the thing relinquished. In *Hoelzer* the murals were left "with other construction debris, in a heap near the outside dumpster," and the Second Circuit still found no abandonment, because the owner's intention governed. *Id.* at 1134, 1138.

The pleading omits every fact that would make the inference possible. It does not allege when the family removed the valuable works, how long afterward Hughes acted, whether Hughes ever spoke to the family, or whether anyone in the family knew the Drawing was there at all. What it does allege is that the landlord "was eager to recover possession of the apartment" and for that

reason asked Goode to clear it. FACC ¶ 25. The intention that governs under *Foulke* and *Hoelzer* is the owner's. The only intention this pleading supplies is the landlord's.

The difficulty is structural rather than evidentiary. The only affirmative act or omission the Counterclaim offers is silence: that no one from the family or the estate "ever inquired about the Drawing or sought its return" in the decades that followed. FACC ¶ 24. An omission demonstrates an intention to relinquish only if the person omitting to act knew there was something to act upon. The Counterclaim's own allegations account for that silence without any link to intent: a sketch never finalized, never displayed, never reproduced, recorded nowhere, and unseen even by the person best placed to see it. FACC ¶¶ 11-12, 15-16. Page asserts the Drawing to have been invisible to everyone around it and yet deliberately left behind. Abandonment requires a choice.

The rule Page needs would also reverse an allocation New York has already made. Asked to require an owner of missing property to search for it on pain of losing the right to recover it, the Court of Appeals refused, because "the better rule gives the owner relatively greater protection." *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 320 (1991). That was said of the limitations period, but its premise is general: an owner's failure to pursue what she cannot find is not a surrender of what she owns.

*Arista* does not cure the contradiction. A belief may be pleaded where it "is based on factual information that makes the inference" plausible. *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Removing the valuables is at least as consistent with a family that did not know the Drawing was there as with one that relinquished what it left. Where an "obvious alternative explanation" appears on the pleading's face, the pleader's inference is not the plausible one. *Iqbal*, 556 U.S. at 682.

## II. THE OPPOSITION SUPPLIES A NEW ACCOUNT OF GOODE'S TAKING, AND THE NEW ACCOUNT MAKES HER A FINDER

The account of how Goode came to hold the Drawing has changed again, and in answer to a legal hurdle rather than to any new fact.

The First Amended Counterclaim, filed five weeks ago, pleads that Goode "took lawful possession of its abandoned, unclaimed contents." FACC ¶ 26. The opposition says she "never took the contents into her own ownership." Opp. 10. The first of those is in the pleading. The second is its opposite, and it is in no pleading at all. The pleaded version attributes the taking to the landlord — "[a]t Hughes's instruction," Goode cleared the apartment and "thereby" took possession, *id.* — and a landlord holds no interest in a departed tenant's chattels. So the opposition decides to sever the two: "Goode's possession arose from the abandonment, not from Hughes's request." Opp. 9. Then it dispenses with her possession altogether: the Drawing "remained ownerless in her hands until Page received it." Opp. 10.

Page once told the Court, in asking it to dismiss, that the Drawing "was a gift to me from Mr. Rankin," in thanks for the care he gave during Rankin's illness. Dkt. No. 17 at 1. The Counterclaim now alleges Goode gave it to him. FACC ¶¶ 27, 29; Opp. 15. A memorandum cannot amend a pleading, and Page has had his opportunity to cure. He is entitled to the inferences his pleading supports, not to a new theory each time the one on file meets a legal hurdle.

The alternative fares no better. The ownerlessness it posits has one possible source — the abandonment. Page cannot characterize Goode's acts both ways: he calls them "acts of dominion, not custody," Opp. 10, but under *Foulke* abandoned property "is owned by him who takes it into his ownership," 228 N.Y. at 273. On his own characterization, Goode took it and exercised the power to give it away.

The new account also carries a consequence the opposition does not address. If Goode took the contents on her own rather than at the direction of anyone holding an interest in them, she is a finder, and in New York a finder acquires title only through Article 7-B of the Personal Property Law. A "finder" is "the person who *first* takes possession of lost property," N.Y. Pers. Prop. Law § 251(5), and "lost property" expressly includes abandoned property, waifs, treasure trove, and other property "which is found." *Id.* § 251(3).

The statute supplies the only route to title, and it ends in a single provision: "[t]he title to lost property *which has been deposited with the police* shall vest in the finder." *Id.* § 257(1); *see id.* §§ 252(1), 253(7), 254(2). The Counterclaim pleads none of it. Goode is not alleged to have reported the Drawing, deposited it, waited out the period, or taken delivery. She acquired no title, and a person without title conveys none.

It is Goode's status, not Page's, that governs. Page does not claim to have found anything; his pleading says Goode "found" the Drawing, decided its disposition, and delivered it to him for nothing. FACC ¶¶ 26, 27, 29. Each version of the donor's taking fails. If Goode took at the landlord's instruction, the landlord had nothing to give. If she took on her own, she was a finder who bypassed the statute. If the contents were never abandoned, she took nothing at all.

## III. PAGE CANNOT BE A LAWFUL OWNER FOR PURPOSES OF TITLE AND A TORTIOUS POSSESSOR FOR PURPOSES OF LIMITATIONS

The opposition's limitations theory is that the demand-and-refusal rule governs purchasers only, that Page is not a purchaser, and that it therefore does not reach him. Opp. 16-17. The argument is fatally incomplete because Page never identifies the rule that does reach him.

New York supplies two, and Page quotes the dichotomy himself. Against a good-faith purchaser, accrual awaits demand and refusal; against a thief, "demand would be futile" and the

period runs from the taking. Opp. 16 (quoting *State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 261 (2002)). The line between them is drawn by wrongfulness, not by consideration. The demand requirement exists because an *innocent possessor* "commits no wrong, as a matter of substantive law, until he has first been advised of the plaintiff's claim to possession and given an opportunity to return the chattel." *Solomon R. Guggenheim Found. v. Lubell*, 153 A.D.2d 143, 147 (1st Dep't 1990) (citing *Gillet v. Roberts*, 57 N.Y. 28), *aff'd*, 77 N.Y.2d 311 (1991). Which is why the First Department stated the rule as reaching a good-faith purchaser "or indeed anyone else whose possession is not tortious." *Id.*

Page's reading also cannot be squared with the authorities on which it rests. The decisions this Court cited for the proposition that an unauthorized gift accrues on conveyance each involved a transfer that was unlawful when made: gifts of public property "unlawful at the time of each transfer," an estate transfer to the transferor himself that was "unauthorized and unlawful," and a conveyance made "without authority" from which the recipient's "possession of it was not lawful." Op. at 9 (citing *New York City Transit Authority*, *In re King*, and *In re Estate of Loew*). That is the thief's side of the line, not a third category. Page pleads the other side. Moreover, the contingency the Court described concerned "*the transfer of the Drawing from Rankin to Page*." Op. at 9. Page no longer alleges that such a transfer occurred. FACC ¶ 29.

Courts have applied the rule to possessors who paid nothing. *Hoelzer* held that the City's claim accrued when it demanded the murals from a restorer who had never purchased them. 933 F.2d at 1137. *Hoel* applied the rule to a work received as a gift alongside two that were purchased. 772 F. Supp. 2d at 483. *Howard University* applied it where gratuitous acquisition was undisputed. 588 F. Supp. 3d at 462, 474. Page identifies no decision holding otherwise. Opp. 17.

Page also tells the Court that how the possessor is characterized "cannot be made on these pleadings." Opp. 17. But he has already made it. The Counterclaim pleads that Goode took "lawful possession," that Page "acquired title" on receipt, and that he has "always maintained a claim of right." FACC ¶¶ 26, 28, 31; Opp. 6, 9-10. A possessor so characterized is not tortious, and a non-tortious possessor is within the rule. If Page means instead that his possession may have been wrongful from the outset, he has conceded that he never acquired title and the Counterclaim fails on its own terms.

Defendant's own Answer closes the circle. The Fifth Defense pleads that "Swan made a demand upon Page through Sotheby's in or about October and November 2019, and Page refused that demand." Answer, Fifth Defense; *see* Opp. 22. A defense built on the demand-and-refusal mechanism cannot be squared with an argument that the mechanism does not apply to the party pleading it.

## IV. THE TOLLING ARGUMENT IS UNANSWERED

New York's limitations periods were tolled for 228 days by Executive Orders 202.8 through 202.72. *See Brash v. Richards*, 195 A.D.3d 582 (2d Dep't 2021); *Powell v. United States*, No. 19-CV-11351, 2022 WL 1645545 (S.D.N.Y. May 24, 2022). Even on Page's own chronology the claim was timely when filed on December 8, 2022. The opposition mentions none of it. Nor does it address the November 14, 2019 letter, which identifies the party then in possession — not Page.

Page answers that the Fifth Defense "is not before the Court." Opp. 21. Swan seeks no judgment on it, only recognition that it bars nothing here.

## V. THE STIPULATION FORECLOSES THE OUTCOME PAGE'S LIMITATIONS DEFENSE IS DESIGNED TO PRODUCE

Page tells the Court that a declaration of title would supply "precisely what the Stipulation contemplates — an instruction identifying to which party the Drawing should be released." Opp. 23. He is correct about what the Stipulation contemplates, and that is the difficulty for him.

The Stipulation is a two-key instrument, as his pleading describes it: Sotheby's holds the Drawing "pending an instruction from the Court, or by both Swan and Page jointly, as to which of them the Drawing should be released to," and the parties agreed to adjudicate their claims to title "directly between themselves." FACC ¶ 36. The Court of Appeals construed an escrow provision of the same design in *Mirvish v. Mott*, 18 N.Y.3d 510, 517 (2012).

*Mirvish* holds that a limitations defense cannot generate title or possession under such an agreement. Assuming the claimant's claims were time-barred — a question the Court expressly declined to decide — "the estate cannot as a result secure possession of or title to the sculpture." *Id.* at 519 & n.6. The Court refused to read the agreement to leave the work "condemned to languish in escrow in perpetuity." *Id.* at 520.

Page's Fifth Defense, even if it succeeded entirely, would not deliver the Drawing to him or give him title; it would leave the Drawing at Sotheby's indefinitely, the one outcome the Stipulation was executed to prevent. If Swan's claim accrued in 1989, a damages claim is late, but title does not thereby pass to Page: a limitations bar extinguishes a remedy, it does not transfer ownership. That the Stipulation contains no waiver of defenses, FACC ¶ 36, is beside the point; the escrow agreement in *Mirvish* contained none either.

## VI. THE REMAINING POINTS

Page's relative-title argument answers a defense he is not asserting. He is the claimant, seeking a declaration that title "is vested in him," FACC ¶ 49, Prayer ¶ (a) — which requires a source of title in the first instance.

## CONCLUSION

For the foregoing reasons and those in Plaintiff's opening memorandum, the Court should dismiss the First Amended Counterclaim in its entirety and grant such other relief as it deems just and proper.

Dated: Brooklyn, New York
October 13, 2026

Respectfully submitted,

THE EUBANKS LAW FIRM, PLLC
By: /s/ Renee Eubanks
Renee Eubanks, Esq.
535 Dean Street, Suite 618
Brooklyn, New York 11217
(212) 390-8949
renee.eubanks@eubanksfirm.com
*Attorney for Plaintiff Phyllis Swan*

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel certifies that, according to the word-processing system used to prepare this memorandum, the total word count for all printed text is 2,852 words, inclusive of footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this certificate.

Dated: Brooklyn, New York
October 13, 2026

/s/ Renee Eubanks
Renee Eubanks, Esq.